AMERICAN SODA FOUNTAIN COMPANY v. GERRER's BAKERY,
    *a copartnership composed of* ALBERT GERRER, JOHN GERRER AND F. X. GERRER.

(Filed September 1, 1904.)

1. **SALES OF PERSONALTY**—Election of Remedies Where Title Does Not Pass Until Purchase Money is Paid. Where personal property is bargained to be sold on time, the title to remain in the seller until the purchase money is paid, and a delivery is made to the purchaser subject to certain conditions to be performed by the seller, before possession or title can pass to the purchaser,

such seller cannot, until he has substantially performed. such conditions, elect to treat the property as that of the purchaser and sue for and recover the contract price upon failure of the purchaser to accept the property and pay the purchase money as agreed.

2. INTERPRETATION OF CONTRACTS—Ambiguity—Mutual Intention of Parties Controls. Where a written contract contains provisions which render it uncertain or ambigious, the court may ascertain and give effect to the mutual intention and understanding of the contracting parties.

(Syllabus by the Court.)

*Error from the District Court of Canadian County; before C. F. Irwin, Trial Judge.*

*Blake & Blake,* for plaintiff in error.

*Geo. S. Pearl* and *Jos. G. Lowe,* for defendants in error.

STATEMENT OF FACTS.

Prior to the bringing of this action the American Soda Fountain Company consigned to E. S. Rhoads, at El Reno, O. T., certain soda water apparatus, which were stored at the Rock Island freight depot, and upon which there was an unpaid freight bill due the railroad company for the sum of $122.58.

On January 28, 1902, an agent of the American Soda Fountain Company sold this apparatus to the firm of Gerrer's Bakery, at El Reno, O. T., and at that time entered into a written contract of sale. The contract is prepared upon one of the regular printed blanks of the company, a considerable portion of which has no reference or application to the sale in question, and should be treated as surplusage, After eliminating largely all irrelevant matter contained in this instrument, it reads as follows:

"El Reno, O. T., Jan. 28, 1902.
"American Soda Fountain Co.,
        Boston, Mass.

"Forward the following described soda water apparatus, and upon receipt of bill of lading or tender of goods I will honor sight draft Apr. 2, 1902, or other demand for $200.00, and the balance I promise to pay in monthly sums as follows: $50.00 per month till paid, with interest at six per cent from date of shipment with each payment, and for such balance and interest will execute and deliver contract notes of like tenor and form to the one printed on the back of this order, and maturing as above set forth and will execute such other papers as may be necessary under the laws of this state to protect the title of American Soda Fountain Company against all third parties. I agree to insure said apparatus for $————, the loss, if any, payable to American Soda Fountain Co., as its interest may appear, and to keep the same insured until all payments are made.

"The delivery of said apparatus etc., to be conditioned upon compliance with the above terms and conditions, and said apparatus to remain the property of American Soda Fountain Co., till paid for.

"Description of apparatus:

"The Gibson Soda App. Onyx body, W. & G. top, originally shipped E. S. Rhoads; 14 syrup faucets; 2 soda draught tubes; 3 mineral draught tubes; 15 ft. tumbler drainer and sink; 1 App. Base marble slab. Price $1400.

"When shipped:

"Delivered to purchasers in C. R. I. & P., freight depot. Freight and setting up charges to be paid by consignee.

"This order cannot be countermanded and this is fully understood by the signers. There are no other conditions or agreements with your salesman except those herein stated, and no claim will be made for anything not specified herein.

                                        "Gerrer's Bakery."

The property described in the contract was exhibited to one of the Gerrers in the railroad freight depot and he agreed to take it on the terms of sale as specified in the contract. The consignee accompanied the parties to the depot and gave his check to the railroad agent for $62.50 to apply upon the freight account, and the agent for the Soda Fountain Company agreed that the company would pay the remainder of the freight. This was not paid, and had not been paid at the time of trial, and the check given by Rhoads was protested and not paid, and the railroad company still holds the property for the amount of the freight expense account.

The Gerrers refused to take the property, and notified the company to consider the order canceled. The company presented notes for the deferred payments as provided in the contract, and demanded payment of the $200, and execution of the notes. Gerrers refused to pay any money or sign the notes, and the company brought this suit to recover the full contract price of $1400. The defendant F. X. Gerrer answered denying under oath that he was a partner of the firm of Gerrer's Bakery, and also denied the execution of the contract. The other two defendants answered jointly, and denied under oath that the partnership was composed of the three Gerrers, as alleged in the petition. They also answered by general denial, and specially denied that the firm of Gerrer's Bakery was liable on the contract set out, for the reason that it was executed upon the express condition that the company would pay the freight due on the goods, and that the freight had never been paid by anyone.

The case was tried to the court, and after plaintiff introduced its evidence and rested, the defendants demurred

to the evidence. The court sustained the demurrer, and gave judgment for the defendants for costs.

The evidence conclusively showed that F. X. Gerrer was not a member of the copartnership known as Gerrer's Bakery, but that the firm was composed of John and Albert Gerrer, the other two defendants in the case. It was also shown that at the time the agent exhibited the goods in the depot that the railroad agent and the consignee Rhoads were present, and it was there agreed that the freight account should be paid by Rhoads and the company. The company admitted that such was the agreement. It was further shown that none of this sum had ever been paid, and that the railroad company had the goods in its possession, and was holding them for the freights.

The plaintiff appealed, and it is alleged that the court erred in sustaining the demurrer to the evidence.

Opinion of the court by

BURFORD, C. J.: There are several alleged errors discussed in the briefs of counsel for both sides, but we do not consider it necessary to examine all of them. If the judgment of the district court was right upon the whole evidence, then its ruling on the demurrer to the evidence should be sustained.

This contract was executed on January 28, 1902. The first payment of $200 was not due on the contract until April 2, 1902, and the balance of $1200 was payable in installments of $50 per month, the title of the property to remain in the American Soda Fountain Company until the last payment was made. The petition was filed and suit instituted May 5, 1902. At that time by the terms of the

contract only $250.00 was payable. We assume that the plaintiff brought this action upon the theory that upon default by the purchasers they had the right to treat the title as having passed on delivery of the property, and to sue for and recover the entire contract price. There is some conflict of authority as to what the seller's remedy is where the property is sold upon condition that the title shall remain in the seller until the property is fully paid for, and delivery of possession is made. But the better doctrine seems to be that the provision reserving title in the seller is one for the benefit of the seller, and he may waive it at his election, and where delivery is tendered and refused, or the goods have been delivered and acceptance refused, the seller may either sell the property and recover in damages the difference between the sale price and the contract price, or he may elect to treat the property as sold, waive the condition that title shall not pass, and sue for the contract price and retain a lien upon the property for the amount recovered in the judgment. This principle seems to be sustained by the greater weight of the authorities, and is in harmony with the modern demands of trade and commerce.

In *Shephard v. Mills,* 173 Ill. 223, the court said: "A provision in a contract for putting a heating apparatus in a building, by which the title to the apparatus is to remain in the contractor until full payment, he reserving the right of removal upon default, is a provision in his favor which he may waive, and treating the title as having passed, he may sue on the common counts."

In *Bell v. Affutt,* 10 Bush. 632, it is said by the supreme court of Kentucky: "Where a purchaser refuses to receive the thing bargained for, the vendor may consider it as his own and sue for the difference between the contract and

the market price; or he may consider it as the property of the purchaser and sell it with due precaution to satisfy his lien for the price, and then sue for and recover the unpaid balance; or, he may consider it as the property of the purchaser and hold it subject to his call or order, and sue for and recover the whole price agreed."

To the same effect is *Mason v. Decker,* 72 N. Y. 595; *Quick v. Wheeler,* 78 N. Y. 300; *Brewer v. Ford,* 7 N. Y. Supp. 244, 126 N. Y. 643; *Bridgford v. Crocker,* 60 N. Y. 627; *Brown v. N. Y. C. R. R. Co.,* 44 N. Y. 78; *Clay v. Bohonon,* 54 N. H. 474; *Marion Safe Co. v. Emanuel,* 21 Abb. New Cases, 181; *Mitchell v. LeClair,* 165 Mass. 308; *Morse v. Sherman,* 106 Mass. 430; *Carnahan v. Hughes et al.,* 108 Ind. 225, 19 Enc. Pl. & Pr. 6.

But the right of the vendor to recover the purchase price is dependent upon the performance by him in good faith of substantially all the requirements on his part. He is not entitled to treat the property as belonging to the purchaser and recover the contract price except in case he has delivered the property, or in good faith tendered it according to the terms of the sale. If there is some condition to be by him performed which must be done before the possession or title can vest in the purchaser, then he cannot treat the property as that of the purchaser, and a failure on his part to perform such condition will defeat his right of recovery. Applying these rules to the case under consideration, what is the result? It may be stated as a general rule applicable to the construction of contracts, that where the contract contains plain, intelligible, unambiguous provisions, courts must look to the contract alone for its meaning, but where the contract is subject to any ambiguity, the court

will ascertain the intent of the parties contracting, and give effect to their understanding and intent. The contract in evidence is an order for certain articles of personal property, at El Reno, "originally shipped to E. S. Rhoads" and contains these provisions: "When shipped. Delivered to purchasers to-day in C. R. I. & P. freight depot." "Freight and setting up charges to be paid by consignee." It is evident that here is an ambiguity, a matter that cannot be determined by looking to the contract alone, a matter that requires extrinsic explanation. The consignee is to pay "freight and setting up charges." Who is the consignee? A consignee is one to whom a consignment of goods is made, the person to whom goods are shipped for sale. (Black's Law Dictionary, p. 256.) The purchasers in this contract could not be the consignees, for they were bargaining for goods shipped to E. S. Rhoads, and for goods already at El Reno, the place where the order was executed. To explain this uncertainty, we are permitted to inquire into the mutual intention of the parties. It is provided by statute, vol. 1, Wilson's Stat. sec. 787, "A contract must be interpreted so as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Sec. 60: "The language of a contract is to govern its interpretation, if the language is clear and explicit and does not involve an absurdity." Sec. 61. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible, subject, however, to the other provisions of this title." Sec. 65. "A contract must receive such an interpretation as will make it lawful, operative, definite, reason-

able and capable of being carried into effect, if it can be done without violating the intention of the parties." Sec. 69. "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." Sec. 71. "If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed at the time of making it, that the promisee understood it."

By applying these statutory rules of interpretation to this provision of the contract, there is no difficulty in arriving at what the parties mutually intended by the consignee paying the freight and setting up charges. Both Mr. Gerrer and the agent who made the contract testified on the trial that Rhoads was to pay the charges against the goods for freight, and that as between him and the Soda Fountain Company it was agreed that Rhoads should pay $62.50 charges and the Soda Fountain Company would pay the remainder, and pursuant to this agreement the day the agreement was made, Rhoads gave a check to the railroad company for the sum of $62.50 which was never paid. Here was an obligation resting upon the seller to discharge this obligation to the railway company before it could make a complete delivery of the property to the purchasers. It is true it is stated in the order "delivery to purchasers to-day in C. R. I. & P. freight depot," but this delivery to the purchasers was subject to the condition that the freight was to be paid. The Soda Fountain Company could not make such a delivery as would pass unconditional possession or title absolute until these charges were satisfied. The common carrier had a lien upon the goods for its charges depen-

dent upon possession, and it was the mutual understanding of all parties at the time that Rhoades should pay one-half the charges and the sellers the other half. Neither of them kept this agreement, the charges were never paid, and the plaintiffs were not in a position to treat the property as that of the Gerrers and recover the contract price until they had substantially performed every condition necessary to compel the purchasers to accept the goods, and placed them in the position where absolute title would have passed, if they had accepted the goods and paid for them.

We think there was no error in sustaining the demurrer to the evidence. If the Soda Fountain Company desired to enforce this agreement against the Gerrers, it was incumbent on it not only to deliver the goods in the depot, but to remove all obstructions that would prevent the Gerrers from taking possession and removing the goods. There was no obligation resting upon the Gerrers to pay the freight charges, and while it is true this was not the grounds upon which they declined to accept and pay for the goods, yet it was one of the conditions required to be performed or done by the sellers before they could enforce payment of the contract price.

The judgment of the district court is affirmed, at the costs of plaintiff in error.

Irwin, J., who presided in the court below, not sitting; all the other Justices concurring.