**MASON MOTORS SPIRIT DISTRIBUTING CO., Ltd., v. COSDEN et al.**

No. 13705—Opinion Filed Sept. 23, 1924.

Rehearing Denied Nov. 12, 1924.

Second Rehearing Denied Jan. 6, 1925.

**1. Frauds, Statute Of—Telegrams as Memorandum of Contract.**

While telegrams or cablegrams may constitute a sufficient memorandum of a con-

tract within the statute of frauds, yet, in order to do so, the invariable rule is that they must, taken as a whole, contain all the material terms of the contract, leaving nothing to be proved by parol evidence.

## 2. Same—Invalidity of Sale of Gasoline.

A contract of sale alleged to have been made by a seller's conditional acceptance by cablegrams and telegrams of a buyer's oral offer to purchase ten million gallons of a particular kind of gasoline ("from .715 to .733 specific gravity: final boiling point not to exceed 340 degrees Fahrenheit; color, white, and odor, sweet") to be delivered in a particular manner and at specified times (in consignments of two million gallons each and from sixty to ninety days apart, beginning about March 1, 1915), and on certain terms of credit (15c per gallon and certain transportation charges to be paid as each consignment is taken from storage and sold in London, England, but within sixty days after arrival, and one-half the net profits on resale to be paid every thirty days), and which cablegrams of acceptance do not describe the particular quality of gasoline, nor contain the terms of credit agreed upon nor the provisions as to the time and manner of delivery, is invalid under subdivision 4 of section 5034, Comp. Stat. 1921, commonly called the statute of frauds.

## 3. Same—Sufficiency of Messages to Constitute Contract.

While a valid binding contract may be entered into through a series of cablegrams or telegrams; yet, in order to do so, such cablegrams and telegrams must be complete within themselves and so connected with each other that they may be said to fairly constitute one paper and to contain all the material terms of the agreement between the parties, leaving nothing to be proved by parol evidence.

## 4. Same—Action on Contract—Demurrer to Petition.

A general demurrer lies to a petition which shows that the contract sued upon, or for a breach of which damages are claimed, is within subdivision 4 of section 5034, Comp. Stat. 1921, commonly called the statute of frauds.

## 5. Customs and Usages—Limit of Admissibility in Evidence.

While oral evidence of a custom is admissible to explain the meaning of technical terms, abbreviations or symbols contained in a memorandum, it is not admissible to explain the meaning of a phrase, abbreviation, etc., not found in the memorandum, nor is it admissible to supply a material term or provision of a contract, which has been omitted from the memorandum.

## 6. Frauds, Statute Of—Sale of Goods for over $50.

An agreement for the sale of goods at a price not less than $50 is not valid within the statute of frauds, section 5034, Comp. Stat. 1921, unless all the terms of the contract, including the description of the goods sold, the terms of credit agreed upon and the provisions as to the time and manner of delivery, are evidenced by writing subscribed by the party to be charged or his agent.

Error from District Court, Tulsa County; Albert C. Hunt, Judge.

Action by Mason Motors Spirit Distributing Company, Ltd., against J. S. Cosden et al. Judgment for defendant, and plaintiff appeals. Affirmed.

H. B. Martin, and R. A. Reynolds, for plaintiff in error.

James C. Denton, Richard H. Wills, and J. H. Crocker, for defendant in error.

Opinion by JONES, C. This action was instituted in the district court of Tulsa county on the 14th day of October, 1920, by appellant, plaintiff in the trial court, against the appellees, defendants in the trial court, to recover damages for an alleged breach of a contract of sale of gasoline by defendants to plaintiff, and this appeal is taken from a judgment of the trial court sustaining defendant's general demurrer to plaintiff's amended petition, which is as follows:

"Comes now the plaintiff, and for its cause of action against said defendants says and avers:

"(1) That the plaintiff is now, and has been at all times hereinafter mentioned a corporation organized and existing under and by virtue of the laws of England, having its principal office and place of business at 155 Upper Thames Street, London, and was engaged in the business of buying and selling gasoline called 'petrol.'

"(2) That at all times hereinafter mentioned one Japh Mason was the president of the plaintiff corporation and general manager and executive officer of said plaintiff with full power and authority to make on behalf of plaintiff any contract for the purchase or sale of said commodity.

"(3) That the defendant, Cosden & Company, is and has been at all times hereinafter mentioned a corporation organized and existing under and by virtue of the laws of the state of Oklahoma, having its principal office and place of business at the city of Tulsa in said state, and engaged in the business of refining petroleum oils, and marketing the refined products thereof, including gasoline or petrol, and that the defendant, J. S. Cosden, has been at all times herein-

after mentioned the president, chief executive officer, and general manager of the said defendant corporation with full power and authority to make contracts in its behalf for the sale of its manufactured products, including gasoline or petrol.

"(4) And plaintiff avers that at all times hereinafter mentioned one A. F. Gressler was the duly, authorized agent of the plaintiff to negotiate for the plaintiff the contract hereinafter set out and pleaded.

"(5) And plaintiff avers that heretofore, to wit: at the city of New York, in the state of New York, about the 5th day of February, 1915, until the 19th day of February, 1915, the plaintiff acting by its said agent, A. F. Gressler, and its said president, Japh Mason, and the defendants acting by the said J. S. Cosden, made and entered into a certain contract by the terms of which the plaintiff agreed to buy and the defendants agreed to sell and deliver to the plaintiffs at London, England, 10,000,000 gallons of gasoline, or petrol, to be delivered by the defendants to the plaintiff in consignments of 2,000,000 gallons each, the first of said deliveries to be shipped about the first day of March, 1915, and delivered in London about the 20th day of March, 1915, and the second consignment to be delivered in London from 60 to 90 days after the second aforesaid; the fourth consignment to be delivered in London from 60 to 90 days after the third aforesaid, and the fifth consignment to be delivered in London from 60 to 90 days after the fourth aforesaid, said gasoline to be commercial gasoline. And plaintiff avers that by the uses and customs of the gasoline trade at the city of New York, and the city of London, aforesaid, commercial gasoline for the purpose of commercial sale in London was at the time, and was known to be at the time by all of the contracting parties in said transaction to be from .715 specific gravity to .733 specific gravity; the final boiling point not to exceed 340 degrees Fahrenheit, white color and odor sweet. And said deliveries were to be made in the storage tanks of the London Thames Haven Oil Wharves, Ltd., London, England, for which said gasoline the plaintiff agreed to pay 15 cents per gallon, and all transportation charges above 30 shillings per ton paid out by the defendants; said payments to be made by the plaintiff to the defendants as said gasoline should be taken from said storage and sold; such payments including the said 15 cents per gallon with said transportation charges above 30 shillings per ton added, but it was agreed and contracted that in no event should the time of payment for each of said shipments extend beyond 60 days after the date of the delivery of said shipments as aforesaid.

"(6) And plaintiff avers that it was agreed and contracted that plaintiff should procure a guarantee from the London Guarantee and Accident Company, Limited, to be made to the defendants or their nominee in the amount of 50,000 pounds sterling, guaranteeing the said payments as aforesaid.

"(7) And it was further contracted and agreed that the plaintiff would provide adequate and proper storage to accommodate said shipments as they arrived.

"(8) And plaintiff avers that it was further contracted and agreed between the plaintiff and the defendants that as further compensation to the defendants the plaintiff would pay one-half of the net profit to be realized by the sale of said merchandise in the English markets; settlement to be made every 30 days after the delivery of the first shipment.

"(9) And plaintiff avers that a memorandum of said contract was made and entered into in writing between the said parties, as follows:

"On or about the 7th day of February, 1915, at the city of New York the plaintiff by its agent A. F. Gressler thereunto duly authorized, offered to purchase from the defendants upon the terms hereintofore stated, and thereupon the defendant, J. S. Cosden, for himself and his codefendant herein, transmitted by cable in writing to Japh Mason, the president of the aforesaid plaintiff corporation in words and figures to wit:

"'February 7. 1915.

" 'Japh Mason,

" '155 Upper Thames Street,

" 'London.

" 'Gressler has offered us contract to furnish you ten million gallons gasoline delivered London during year at 15 cents gallon based on 30 shilling freight; if we should be compelled to pay up to 46 shillings per ton you are to pay difference; will accept contract if you furnish satisfactory bond and reference; who has been furnishing you. Answer to Biltmore Hotel.

" 'J. S. Cosden'

—to which message on the 8th day of February, 1915 the plaintiff by its said president replied by cable in writing as follows:

" 'J. S. Cosden,

" 'Biltmore Hotel.

" 'New York.

" 'Thanks. Am arranging 50,000 pounds insurance company guarantee. Will cable immediately completed.

" 'Mason.'

"(10) And plaintiff avers that on or about said date last named the defendants through their agent, J. S. Cosden, informed the plaintiff, through its agent, A. F. Gressler, that the aforesaid guarantee should be made through the contract of the London Guarantee and Accident Company, Ltd., of London, England, with a branch office in New York City.

"On February 10, 1915, the plaintiff by its

said president transmitted in writing by cable to the defendants the following message:

" 'J. S. Cosden,

" 'Biltmore Hotel,

" 'New York.

" 'Proposed insurance guarantee fifteen cents out of proceeds of sale upon amount received into tank and certified by London Thames Haven Oil Wharves, Limited. Three months cover time ample. We agree to pay excess of thirty shillings freight also half net profits. Cable approval.

" 'Mason.' "

"Plaintiff avers that by the understanding of the parties aforesaid 'three months cover time' was meant, and was understood by said parties to mean three months should be the maximum period of time in which each consignment of the merchandise should be delivered by the defendants sold by the plaintiff to its customers, paid for by the plaintiff to the defendants, and said storage reserved made available for another cargo of merchandise.

"And on or about the 10th of February, 1915, pursuant to the request of the defendants the plaintiff caused its London bankers, London & Provincial Bank, Ltd., Banor Park, London, to transmit by cable in writing, and by letter to the defendants, full assurance of the business integrity of the plaintiff.

"(11) And thereafter, on the said 19th day of February, 1915, the defendants acting through their said agent, J. S. Cosden, communicated by written memorandum in writing by telegram addressed to Myron L. Thompson at the city of New York a message in words and figures as follows, to wit:

" 'Myron L. Thompson,

" 'New York.

" 'Subject to storage being guaranteed in London and bond made for payment, will accept Mason contract, you to receive commission only on gasoline delivered to Mason during 1915. Can deliver 7,000 tons at seaboard 20 days if you agree to secure steamer 40 shillings. Advise at once New York representative of insurance company made up bond.

" 'Cosden & Company'."

"(12) Plaintiff avers that these documents are in possession of the defendants, and that the plaintiff is unable to set out their contents exactly, but plaintiff avers that after the receipt of the same by the defendant, the said defendant, J. S Cosden, communicated orally to the plaintiff, through its agent, A. F. Gressler, that said report as to the business integrity of the plaintiff was satisfactory to the defendants, and thereafter, on or about the 10th day of February, 1915, the plaintiff procured the said London Guarantee and Accident Company, Limited, to agree to execute to the defendants or their

nominee, a bond in writing, guaranteeing the performance by the plaintiff of the terms of said contract up to the amount of 50,000 pounds sterling, and thereafter, on or about the said date last aforesaid the said London Guarantee and Accident Company, Limited, through its New York agent, at its offices in the city of New York, communicated to the defendants, through the said J. S. Cosden, that it was ready and willing to execute said bond to the nominee of the defendants, and thereafter, on or about the said date last named, the defendants, through the said J. S. Cosden, communicated to the plaintiff through its said agent, A. F. Gressler, orally, that the defendants were satisfied with the report as to the business integrity of the plaintiff, and with the guarantee arrangements and with the storage arrangements already provided by the plaintiff, and that the defendants were ready to make the first shipments under said contract and would make the same within twenty days from said date. And thereafter, on or about the 14th day of February, 1915, the defendant, Cosden & Company, communicated in writing by telegraph and cable to the plaintiff through its president, Japh Mason, a message as follows, to wit:

" 'Japh Mason,

" '155 Upper Thames Street,

" 'London.

" 'Will accept your contract upon insurance guarantee and guarantee of storage. Who have you been buying from, and how much last year? Can make first shipments in 20 days. Answer.

" 'Cosden & Company."

"And on February 15, 1915, the plaintiff through its said president, communicated in writing by cable and telegraph to the defendant, Cosden & Company, a message as follows, to wit:

" 'Cosden & Company,

" 'Tulsa, Oklahoma,

" 'Company was only formed last July. Arrangements made for Roumanian supplies. Had to be cancelled owing to war. Guaranteed storage when ready Thames Haven. Send good spirit thus insure permanent business.

" 'Mason.'

"And on or about the 15th day of February, 1915, the plaintiff contracted for, and obtained a contract for storage for seven to ten thousand tons gasoline with the London and Thames Oil Wharves Company, Limited, at London, England, and arranged for prompt discharge of cargo on arrival, and transmitted in writing by cable and telegraph to the defendants on the 17th day of February, 1915, a message as follows:

" 'Cosden,

" 'Tulsa, Okla.

" 'Guarantee now arranged. Cable London Guarantee Company New Broad Street

London full title and address of your firm for policy.

"'Mason.'

"And thereafter, on February 19, 1915, plaintiff through its said president communicated in writing to the defendants by telegraph and cable the following message, to wit:

"'Cosden & Co.

"'Tulsa, Okla.

"'We formally confirm acceptance of contract. Now arranging selling contracts. Keep final boiling point low as possible.

"'Mason.'

"And plaintiff avers that the plaintiff has performed upon its part all the terms and conditions of said contract upon its part to be performed, but that the defendants have breached and broken their said contract in this, to wit: That they and each of them have wholly failed, neglected and refused to deliver to this plaintiff said merchandise in the manner and at the time and place provided by said contract, and having wholly failed, neglected and refused to deliver said merchandise or any part thereof to this plaintiff.

"(14) And plaintiff avers that during the months of March, April and May, 1915, the market value of gasoline in the City of London of the specifications and kind set out in said contract hereinbefore pleaded, was not less than 38 cents per English gallon, and that during the months of June, July and August, 1915, the market price and value of gasoline of said description in London, England, was not less than 50 cents per gallon, and that during the months of September, October and November, 1915, the market value of gasoline of said character in London, England, was not less than 60 cents per gallon, and during the months of December, 1915, and January and February, 1916, the market value in London, England, of gasoline of said character was not less than 70 cents per gallon, and that during the months of March, April and May, 1916, the market value of gasoline of the character aforesaid in the city of London, England, was not less than 75 cents per gallon.

"And plaintiff avers that the plaintiff upon and after the breach of said contract as aforesaid by the defendants made efforts diligently to purchase gasoline in the open market at the City of London, and elsewhere to supply the gasoline contracted for as aforesaid with the defendants, but that it was impossible for the plaintiff to procure said commodity.

"(15) And plaintiff avers that after the payment of all proper and necessary expenses including the transportation charges above thirty shillings per ton, as aforesaid, during the term of said contract a net profit would have been earned by plaintiff upon said 10,000,000 gallons of gasoline of not less than 20 cents per gallon, all to the injury and damage of this plaintiff in the sum of $1,000,000.

"Wherefore, plaintiff prays judgment against the defendants and each of them for the sum of $1,000,000 and interest thereon at the rate of 6 per cent. per annum from the first day of June, 1916, and for the costs of this action."

The defendant demurred to the above petition as follows:

"Come now the defendants, J. S. Cosden and Cosden & Company, a corporation, and jointly and separately demur to the second amended petition of the plaintiff filed herein on November 29, 1921, on the following grounds, to wit:

"That the said amended petition does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against these defendants jointly or either of them separately."

The demurrer being sustained by the court the defendant appeals. It is conceded that under the law of this jurisdiction that the demurrer interposed by the defendants admits all the allegations of plaintiff's petition, for the purpose of the demurrer (Adams v. Hoskins, 96 Okla. 239, 221 Pac. 728), and while the appellant assigns different specifications of error and presents various propositions in its brief, they all go to one and the same question, that of whether or not the cablegrams attached as exhibits to plaintiff's petition and made a part thereof constitute a sufficient memorandum of the agreement of sale and purchase to take the contract sued upon out of the statute of frauds.

From reading plaintiff's petition and the exhibits attached thereto, it is evident that there was an oral offer made by Gressler to the defendant J. S. Cosden. This is clear from the first cablegram sent by Cosden, which is as follows:

"February 19 (7th), 1915.

"155 Upper Thames Street,

"London.

"Gressler has offered us contract to furnish you ten million gallons gasoline delivered London during year at fifteen cents gallon based on thirty shillings freight: if we should be compelled to pay up to forty-six shillings per ton you are to pay difference; will accept contract if you furnish satisfactory bond and reference; who has been furnishing you. Answer Biltmore Hotel.

"J. S. Cosden."

This message refers to a contract, the amount of gasoline, the price, makes reference to freight rate, and requires of appellant making of bond and reference satisfactory to appellees.

This standing alone unquestionably would not be sufficient to constitute such a memorandum as to take the contract out of the statute of frauds.

The response, signed by Mason, agent of the appellant, is as follows:

"February 8, 1915.
"J. S. Cosden,
    "Biltmore Hotel,
        "New York.

"Thanks. Am arranging 50,000 pounds insurance company guarantee. Will cable immediately completed.
                                "Mason."

It is not a compliance with the requirements of Cosden's message, is not complete, and not explanatory of the terms and conditions of the contract in any wise, and was followed by another message as follows:

"J. S. Cosden,
    "Biltmore Hotel, New York.

"Proposed insurance guarantee fifteen cents out of proceeds of sale upon amount received into tank and certified by London Thames Haven Oil Wharves Limited. Three months cover time ample. We agree to pay excess of thirty shillings freight also half net profits. Cable approval.
                                "Mason."

In response to which Cosden sent the following message of acceptance:

"February 14, 1915.
"Japh Mason,
    "155 Upper Thames Street,
        "London.                      e

"Will accept your contract upon insurance guarantee and guarantee of storage. Who have you been buying from, and how much last year? Can make first shipment in twenty days. Answer.
                        "Cosden & Company."

The following messages were sent by appellant:

"February 15, 1915.
"Cosden & Company,
    "Tulsa, Oklahoma.

"Company was only formed last July. Arrangements made for Roumanian supplies. Had to be cancelled owing to war. Guaranteed storage when ready Thames Haven. Send good spirit thus insure permanent business.
                                "Mason."

"Cosden,            "February 17, 1915.
    "Tulsa, Oklahoma.

"Have definitely reserved seven to ten thousand tons of storage. Arranged prompt landing London Thames Haven Company.
                                "Mason."

"February 18, 1915.
"Cosden,
    "Tulsa, Oklahoma.

"Guarantee now arranged. Cable London Guarantee Company New Broad Street London full title and address of your firm for policy.
                                "Mason."

"Cosden & Company,
    "Tulsa, Oklahoma.

"We formally confirm acceptance of contract. Now arranging selling contracts. Keep final boiling point low as possible.
                                "Mason."

And on February 19th the following message was sent Myron L. Thompson, New York, who is admitted to be the agent of appellant, by Cosden & Company:

"February 19, 1915.
"Myron L. Thompson,
    "New York.

"Subject to storage being guaranteed in London and bond made for payment will accept Mason contract, you to receive commission only, gasoline delivered to Mason during 1915. Can deliver seven thousand tons at seaboard in twenty days if you agree secure steamer forty shillings. Advise at once New York representative of insurance company make up bond.
                        "Cosden & Company."

These various messages or cablegrams and telegrams are in our judgment insufficient to constitute such a memorandum as will take the contract out of the statute of fraud, and too indefinite to enable the court to determine the terms and conditions of the contract made and entered into, if in fact any agreement was ever reached or definitely consummated.

From a consideration of the petition and paragraph five thereof it is obvious that the contract as alleged contained definite provisions as to the time and manner of shipment:

"To be delivered by the defendants to the plaintiff in consignments of 2,000,000 gallons each, the first of said deliveries to be shipped about the first day of March, 1915, and delivered in London about the 20th day of March, 1915, and the second consignment to be delivered in London from 60 to 90 days thereafter; the third consignment to be delivered in London from 60 to 90 days after the third aforesaid; and the fifth consignment to be delivered in London from 60 to 90 days after the fourth aforesaid."

—an element of the contract not discernable from either, or all of the messages re-

lied upon. The kind or character of gasoline, the terms of payment, whether cash or credit, and if credit the terms and conditions of same, are wholly lacking.

Appellant contends that the gasoline should be commercial in kind and so alleges, but there is nothing contained in the cablegrams so indicating. A defect of this character might be supplied by proof of custom and usage, where the cause of action is based on a contract, and where in fact a contract has been executed, but in the case at bar there is no executed contract. Appellant relies on certain memoranda to establish an oral agreement, and to take it out of the statute of frauds.

In the case of Hamby v. Truitt (Ga.) 81 S. E. 593, it was held that the written memorandum of agreement relied upon to show compliance with the statute of fraud cannot depend upon parol evidence to supply the necessary or additional elements of the contract, but must be complete in itself.

This was a case involving the sale of 100 bales of cotton sold by Hamby to Truitt, and the memorandum relied on merely referred to the sale of 100 bales of cotton. The plaintiff in his petition alleged that the 100 bales of cotton were to consist of 50,000 pounds, and a demurrer being sustained to the petition the pleader offered to amend, and allege that the agreement was that each bale was to weigh 500 pounds and the cotton was to be the class or grade of middling, or the usual grade, as classed by the commercial world, which offered amendment the court refused to permit, and the Court of Appeals of Georgia affirmed the lower court, both in sustaining the demurrer and in refusing to permit said amendment, and in the opinion the Court of Appeals said:

"We think the court was undoubtedly right in disallowing the amendment, since the effect of the agreement alleged therein would have been to extend the written agreement by the addition of a parol agreement as to the weight of the bales of cotton and the quality or grade to be supplied. As repeatedly said by our Supreme Court, all the material terms of a contract for the sale of goods amounting to more than $50 in value must be in writing, signed by the parties thereto, where the contract is relied upon to take the transaction out of the statute of frauds. Stewart v. Cook, 118 Ga. 541, 45 S. E. 398; Turner v. Lorillard, 100 Ga. 645, 288 S. E. 383."

In the case of Saveland v. Wisconsin Western R. Co. (Wis.) 95 N. W. 130, which was an action to recover damages for breach of an alleged contract by the terms of which plaintiff sold and agreed to deliver to defendant 400,000 hard burned sewer brick at $10.25 per M., the memorandum relied upon was as follows:

"Gentlemen, please place our order for 400,000 kiln-run brick like sample at $9.75 (nine dollars and seventy-five cents) per M. * * * If kiln-run prove unsatisfactory after carload sample you are to furnish hard-burned sewer brick at fifty cents extra per M. I reserve right until Thursday, the 14th, inst., to rescind this order."

Parol evidence was admitted to show that it was orally agreed, on December 15th, that the contract should be changed for hard-burned sewer brick at $10.25 per M., instead of kiln-run brick at $9.75 per M., as contemplated in said written order of December 11th.

The plaintiff obtained judgment below and the Supreme Court of Wisconsin in reversing the case stated in part on page 131 of the opinion:

"Does this order show upon its face, and without resorting to extraneous evidence, that defendant purchased a quantity of hard-burned sewer brick at $10.25 per M.? Certainly no such inference could be properly drawn by the court. But no claim is made that such a conclusion could be reached in the absence of oral testimony in connection with the order. Plaintiff did not rely upon the order alone, but offered parol evidence tending to show that the sale was consummated at an interview on or before December 14th. * * * but, the paper is wholly silent as to any agreement by the parties that the sale was of hard-burned sewer brick at $10.25 per M., instead of kiln-run brick at $9.75 per M. as specified on the face of the order. * * * The rule is well stated by Chancellor Kent (2 Comm. 511): 'Unless the essential terms of the sale can be ascertained from the writing itself, or, by a reference contained in it to something also, the writing is not a compliance with the statute; and, if the agreement be thus defective, it cannot be supplied by parol proof, for that would at once introduce all the mischiefs which the statute of frauds and perjuries was intended to prevent.' Atlee v. Bartholomew, 69 Wis. 51, 33 N. W. 110, Wiener v. Whipple, 53 Wis. 298, 10 N. W. 433, and many other authorities supporting the rule."

A valid contract may be made up of a series of written letters, telegrams, etc., when they are so connected with each other that it may be fairly said they constitute one paper, and set forth with reasonable clearness the terms and conditions of the agreement. This rule has been announced by this court in numerous decisions and appellant calls attention to the cases of Producers Company v. Commission Company, 48 Okla. 488, 150 Pac. 483; Rock v. Fisher,

91 Okla. 220, 216 Pac. 668; Barnes v. Hunt, 73 Okla. 92, 175 Pac. 215; Halsell v. Renfrow, 14 Okla. 674, 78 Pac. 118; Atwood v. Rose, 32 Okla. 355, 122 Pac. 929; Thomas J. Baird Investment Co. v. Harris, 209 Fed. 291.

But from an examination of the authorities cited, it is clear that the court was dealing with a different state of facts from those presented in the case at bar. In the case of Barnes v. Hunt, supra, extensively quoted by appellant, which deals with a purchase of wheat, aside from the fact that the memoranda relied upon to establish the agreement being reasonably clear and sufficient, there was a letter from the defendant admitting the contract and offering to fill it in part, which is as follows:

"Manitou, Oklahoma, 8 29-'14.
"J. C. Hunt Grain Co.

"Sirs: Yours received and contents noted. Will say the recent rains have made the roads impossible for hauling wheat. I had this wheat bought from the farmers, but it has gone up, and they won't deliver it. There is nothing here to load it but 60,000 capacity cars and is nothing else yet, so I began loading a 60,000 car and you will have to put up with that, when I get it loaded. I have 500 bu. in the car, but roads are too bad to haul. You can just expect 1000 bu. I will get it to you as soon as I can. Can't buy any wheat here now for less than a dollar.

"Resp'y, Hoover & Barnes."

And in the case of King Collie v. Richards, 76 Okla. 6, 184 Pac. 130, relied upon by appellant, which deals with a sale of cotton, the memorandum relied on by plaintiffs to take the contract out of the statute of fraud is a letter from the defendant, as follows:

"Bowie, Texas, 12-15-1916.
"Mr. V. L. Richards,
"Terral, Okla.

"Dear Sir: On the 65 bl. sold us at 19 1-16 basis for which you classed and drew for, we re-classed this cotton and figure the class at 98 off mid. We also classed a list for Mr. Barber running 96 3-4 off. Your draft was returned for reasons indorsed. We insist on your filling this cotton at the earliest possible moment or let us cancel and buy elsewhere.

"Yours truly,
"King Collie & Co.,
"Per R. L. Kennedy."

In this case, like that of Barnes v. Hunt, the memorandum relied on sets forth the contract, and asks permission to cancel same. We have examined many of the authorities cited, and like those heretofore discussed they are clearly distinguishable from the

case at bar; in the instant case there is no admission, no partial performance on the part of appellee.

Many authorities are cited by the appellees in support of their contention that the memoranda relied upon is not sufficient.

In 27 C. J. p. 274 it is said:

"Kind, Quality and Quantity.—A writing which does not specify the kind, quality or quantity of the property sold is insufficient * * *. A general description of an article which may include several different kinds, together with a statement of the quantity or number sold, is insufficient: * * * A memorandum of a sale of goods which does not specify the quality of the goods is insufficient where the goods involved are of such a character that the quality becomes a determining factor in identifying the subject-matter. * * *"

The memorandum must state the time of payment or terms of credit agreed upon. In 27 C. J. p. 279, the rule is stated as follows:

"One object of the statute of frauds is to prevent disputes as to the terms of sale. A memorandum of an agreement of sale must state the terms and conditions of sale. It must state all the terms and conditions of the sale. Unless the essential terms of the sale can be ascertained from the writing itself, or by reference in it to something else, the writing is not a compliance with the statute. A writing is insufficient as a memorandum of the sale where it fails to express the time or times of payment, or fails to state whether the terms of sale are cash or credit, and, if on credit, for how long a time and at what rate of interest."

And in 25 R. C. L., p. 647, it is said:

"* * * Where the consideration or price is not to be paid in cash, as in case of contracts for the sale of land where notes secured by a purchase money mortgage are to be given for a part, the terms of payment must be stated. So a memorandum of a sale at auction on credit made by the auctioneer, which fails to state the time and terms of payment, is insufficient, as where it does not show the terms of payment except by stating 'one-third cash down.' A receipt given by a vendor reciting the payment by the vendee of a certain part of the price in cash, and that a bond for title will be given 'on execution of notes for the balance of the purchase money' has been held insufficient to bind the vendor for failure to state the terms of the future payments. * * *"

Section 439 of Mechem on Sales reads as follows:

"Terms of credit or particular mode of payment must be stated. Where no terms of credit are agreed upon, the sale will be deemed to be one for cash on delivery, and this therefore need not be stated. But where

a term of credit is agreed upon, **or particular mode or time of payment is fixed,** it is an essential element of the sale, and a memorandum which does not state the fact is insufficient."

And in Williston on Sales, section 104 it is said:

"The property to which the sale, or contract to sell, relates, must be described in the memorandum. So, although the contract appearing in the memorandum seems to be complete upon its face, if, in fact, **there were additional terms, the memorandum** is insufficient. Thus, if there is a warranty, or a condition of approval by the buyer, or a term of credit, or security, or if the place or time of delivery is agreed upon these must be included in the memorandum. But if no time is agreed upon the law will imply a reasonable time and the memorandum need contain no reference to time. Any other terms are subject to the same rule * * *"

We think this authority is specially pertinent for the reason that when the allegations of plaintiff's petition are considered in connection with the exhibits setting forth the messages relied upon, it is clear that there were additional terms and conditions as to the manner of payment, not referred to in the instruments relied on as a memorandum of agreement.

In Page on Contracts, section 1350, the following rule is announced:

"* * * A memorandum which shows that certain terms of credit and of the payment of the purchase price have been agreed upon, but which does not show what the terms are, is defective."

The memorandum should state the agreement as to the time and manner of delivery. 27 C. J. p. 279, states the rule as follows:

"Time and Place of Delivery. Where the parties to a contract for the sale of chattels, have made no stipulation as to the time and place of delivery, the memorandum is not insufficient by reason of its silence in this respect; * * *. But, where the parties have stipulated as to the time and place of delivery, the stipulation is a material one, going to the essence of the contract, and must be stated in the memorandum with substantial accuracy."

Many authorities are cited sustaining this rule. Appellant alleges that the gasoline was to be delivered in specified quantities at definite given times, at a place certain, which brings this case clearly within the rule as above announced.

We are therefore inclined to the opinion that the memoranda or messages relied upon in this case are not sufficient to take the agreement, which is the basis of the cause of action, out of the statute of frauds as provided by our code.

Section 5034, Comp. Stat. 1921:

"Statutes of Frauds. The following contracts are invalid, unless the same or some note or memorandum thereof be in writing subscribed by the party to be charged, or by his agent. * * *

"Fourth. An agreement for the sale of goods * * * at a price not less than $50 unless the buyer accepts or receives part of such goods. * * *"

The order of the court sustaining the defendants' demurrer was correct, and we recommend that the case be affirmed.

By the Court: It is so ordered.