IRVINE et ux. v. HANIOTIS et ux.

No. 34389. Oct. 28, 1952.

Rehearing Denied Jan. 27, 1953.

252 P. 2d 470.

A. L. Beckett, Oklahoma City, and C. D. Lewis, Okmulgee, for plaintiffs in error.

Steele & Boatman, Okmulgee, for defendants in error.

PER CURIAM. The parties will be referred to as they appeared in the court below. Plaintiffs below, Francis S. Irvine and Hazel Irvine, took this appeal from an order of the trial court sustaining the separate demurrers of the defendants, George Haniotis and Grace Haniotis, to the amended petition filed by plaintiffs.

The amended petition to which the demurrers of the defendants were directed alleged in substance that the plaintiffs are copartners and were at all times mentioned in the petition operating a cafe in the city of Stillwater, Oklahoma, and that in the transactions referred to in said amended petition the defendants, George Haniotis and Grace Haniotis, acted and dealt as copartners. That on the 23rd day of April, 1949, plaintiffs entered into a certain agreement with the defendants in which plaintiffs agreed to sell and defendants agreed to buy a certain cafe for the sum of $12,000: $6,000 of which was to be paid upon execution of the contract which was to be reduced to typewritten form and was to be executed on the 25th day of April, 1949; and the remainder of the purchase price to be paid in monthly installments of $500 each, the deferred payments to bear interest at the rate of four per cent per annum. That the defendants at the time of entering into said contract made, executed and delivered to the plaintiffs a check for $500 drawn on the Citizens National Bank of Okmulgee, payable to plaintiffs and signed by the defendant Mrs. Grace Haniotis. and being given to "bind the agreement as of this date." It was further alleged that the $500 was "part payment of the purchase price as aforesaid." A copy of the check was attached to the amended petition, identified as "Exhibit A". That on the 26th day of April, 1949, plaintiffs received a telegram from the defendant Grace Haniotis, which telegram reads as follows: "Our buyer here backed out. We cannot raise the money. $12,000.00 too much for us". That on the 28th day of April, 1949, plaintiffs received a letter from Mrs. George Haniotis which

advised plaintiffs of the reason why defendants were unable to go forward with the proposed contract. That plaintiffs deposited the check in the First National Bank of Stillwater, Oklahoma, to their credit, and that thereafter the bank was directed by defendants to stop payment upon it. That the check was given for a good and valuable consideration and that defendants are indebted to the plaintiffs for the amount of the check, to wit $500. Plaintiffs then prayed for judgment in the sum of $500 and the costs of the action.

"Exhibit B" set out in the record and attached to the amended petition is an unexecuted writing which was prepared in pencil and denominated "contract of purchase and sale". It is a rather carefully prepared and complete instrument providing for the sale of certain described restaurant or cafe equipment and it is provided therein that the sellers, the plaintiffs here, were to deliver possession of personal property therein described to the buyers, the defendants, on the 20th day of May, 1949, and it further provided that the title to all of the property described therein should remain in the sellers until the purchase price was fully paid.

The defendants each filed separate general demurrers to said amended petition, which demurrers were sustained by the trial court and plaintiffs' cause of action was dismissed. It is from this order that the plaintiffs appeal.

It was the position of defendants below and it is their position here that the amended petition did not state a cause of action against them for the reason that it is shown upon the face of said amended petition that plaintiffs are barred from prosecuting this action by force of the provisions of Title 15, §136, O.S. 1941, which among other things provides:

"The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent: * * *

"4. An agreement for the sale of goods, chattels, or things in action, at a price not less than fifty dollars, unless the buyer accept or receive part of such goods and chattels, or the evidences or some of them, of such things in action, or pay at the same time some part of the purchase money;***"

It is further the position of the defendants that no part of the purchase money was paid by the defendants at the time of the discussion of the parties concerning the contract as provided by the statute above quoted; that the defendant George Haniotis did not sign the check referred to above and therefore could not under any theory be bound by the contractual arrangement described in the amended petition.

Plaintiffs urge that the amended petition did state a cause of action since the check described above constituted a payment of part of the purchase money, and further that the various memoranda executed by the defendant Mrs. George Haniotis are sufficient under Title 15, §136, supra, to establish a contract of sale.

We have said that the penciled instrument denominated "Contract of purchase and sale," which is attached to the amended petition, was unsigned. The defendant Mrs. George Haniotis, on April 23, 1949, executed and delivered to the plaintiff F. S. Irvine her check in the sum of $500, which check bore the legend, "to bind agreement as of this date". As has been pointed out, the defendant Mrs. George Haniotis directed a letter to the plaintiffs dated April 26, 1949, which was as follows:

"Dear Mr. and Mrs. Irvine: I hope you weren't too disappointed. But things just moved too fast. I couldn't separate the things I wanted to do from what I knew I might be unable to do.

"I hadn't made up my mind fully. (Guess I needed a legal adviser). But twelve-thousand dollars is so much money. When we have so little. We were plain scared after we had time to think it over. If the papers had been drawn up, however roughly, and given

us to study we would have realized the weak points, as applied to us.

"If one of us should have become ill or unable to work, especially George, we stood to lose twelve thousand dollars and 12 months' work. I couldn't bear the thought. We had no assurance of a place to live, and such a short time to find one. We were taking too many chances. And I became very nervous. I can't work under a nervous strain, things have to at least appear favorable. The deal was too one-sided. Nothing in our favor. You had nothing to lose. No cause to worry. All the chances taken and strain that accompanies it were on our side. The place secured you.

"Our daughter was too eager. She had no authority to act for us, but she is inexperienced and talked too fast, however Betty is young and very sensitive. She feels this upset her desires very keenly. Please don't hurt her feelings. But I'm sure you won't. You were lovely. Both of you. And the parents were grand people to know.

"If you keep it and, or but, want a rest we'd consider leasing it for 3 or 6 months with an option to buy. We'd feel we had a more firm footing. We wouldn't go in scared that if we didn't make a required amount we'd lose all our life's hard-earned savings. We are reputable business people. We've been in business here for 30 years. The Chamber of Commerce and Retail Merchants will give us their endorsements.

"Very sincerely yours, Mrs. George Haniotis, 210 W. Main, Okmulgee, Oklahoma.

"I sent you the telegram this morning telling you our buyer here backed out. Mrs. H."

For convenience we again set out the telegram referred to in the letter, which is as follows: "Our buyer here backed out. We cannot raise the money. $12,000.00 too much for us."

These are the instruments which the plaintiffs contend constituted sufficient written memoranda to comply with the provisions of Title 15, §136, O.S. 1951.

It is undoubtedly true that a complete contract binding under the statute of frauds may be entered into by letters, telegrams and other writings between the parties relative to the subject matter of the contract if they are so connected with each other that they may be fairly said to constitute one paper relating to the contract. In order, however, to be sufficient the writings relied upon must by reference to each other disclose every material part of a valid contract and must be signed by the parties sought to be charged. The memoranda must plainly set out the parties to the contract, the subject matter, the price, the description of the property and all of the terms and conditions of the contract, and must leave nothing to rest in parol. Jennings v. New York Petroleum Royalty Corp., 169 Okla. 528, 43 P. 2d 762; Mason Motors Spirit Distributing Co. v. Cosden, 105 Okla. 244, 231 P. 890; Davis v. Holman, 163 Okla. 59, 20 P. 2d 575. We think it is obvious that the memoranda relied upon within themselves do not meet the requirements of a complete contract. Had the plaintiffs been permitted to proceed under their amended petition they would have been required to introduce parol evidence concerning the subject matter of the contract and its other terms and conditions and therefore the memoranda under the rule announced above was insufficient to remove the case from the operation of subdivision 4 of Title 15, §136, supra.

We next come to the plaintiffs' contention that the execution and delivery of the $500 check by the defendant Mrs. Haniotis, to the plaintiff Francis S. Irvine, constituted such a payment of "some part of the purchase money" as to exempt the alleged contract from the operation of the above-quoted portion of the statute of frauds. Whether the delivery of such check operates as such a payment is a question upon which this court has not heretofore passed. As appears from the annotation entitled "Check as Payment Within Contemplation of Statute of Frauds" in 8 A.L.R. 2d 251, the authorities are divided on this question.

In any event, that question is not one which we need here to decide for

the statutory exemption presupposes the existence of "an agreement for the sale of goods, chattels or things in action". On the basis of the allegations of plaintiffs' petition it does not appear that the alleged agreement had been consummated by the parties, although they may have been in accord as to the terms and provisions of an agreement which they were contemplating but which was not to be effective until reduced to typewritten form and executed by the parties.

The contemplated agreement as set forth in the alleged penciled draft, attached as "Exhibit B" to the petition, among other things, provides:

"In consideration of the above buyers (defendants) agree to pay to sellers (plaintiffs) the sum of $12.000.00 as follows: $6,000.00 cash in hand upon execution of this contract, receipt of which is hereby acknowledged; * * *"

Thus is appears from the draft of the contemplated contract and from the allegations of the petition that two conditions precedent were to be met before there was to be any binding agreement: (1) the execution of the contract after it had been reduced to writing in final typewritten form, and (2) the payment of $6,000 to be made by defendants simultaneously with the execution of the formal contract.

Surely plaintiffs would not contend that the delivery of the $500 check would be sufficient to evidence and establish as fact a contract in which plaintiffs acknowledged their receipt of $6,000 as recited in the draft of the contemplated agreement.

As stated by this court in Western Roofing Tile Co. v. Jones, 26 Okla. 209, 109 P. 225, 227:

"The rule in reference to the question here presented is that, where parties desire to make the reduction of any agreement into which they have entered to writing and its signature a condition precedent to its completion, *it will not be a contract until this is done,* and this is true although all of the terms of the contract have been agreed upon." (Emphasis supplied.)

The $500 check could not constitute the payment of "some part of the purchase money" and thus exempt a contract from the operation of the statute of frauds unless there was an agreement between the parties which was or would become binding on them upon such payment. But, under the allegations of the petition, even had there been an agreement, such agreement had been rescinded by the telegram and letter sent to plaintiffs by the defendant Grace Haniotis on April 26, 1949, and plaintiffs apparently have acquiesced in and approved of such rescission for they do not allege that they have ever reduced the contract to final typewritten form or submitted it in such form to the defendants for execution, nor do they allege that they have tendered any performance of the contract on their part or that they are now ready, able and willing to perform thereunder. By this action, plaintiffs do not seek to enforce any performance under the contract, nor do they seek damages for any breach thereof. They merely seek recovery of the $500 amount payable under said check.

In other words, they seek recovery on the check, but by their allegations showing either want of, or failure of, consideration therefor, are precluded from any recovery thereon.

As pointed out above, plaintiffs brought this action to recover on the $500 check, alleging that said sum constituted part payment of the purchase price of $12,000. It is nowhere alleged in the amended petition that there has been an actual delivery of the personal property involved to the defendants or any offer to deliver it in accordance with the terms of the penciled memorandum relied upon. Nor is there any allegation to the effect the defendants refused to accept said property and there is no allegation setting forth any valid excuse or inability to make such offer to deliver. We are unable to tell from the amended petition whether the

plaintiffs still hold title to the property in question and are in a position to deliver it to the defendants.

In the early case of Haynes v. Brown, 18 Okla. 389, 89 P. 1124, this court stated in the syllabus:

"Where there has not been an actual delivery of personal property, the seller, in order to maintain an action for the purchase price, must both aver and prove an offer to deliver and refusal to accept; and also that he is able, willing, and ready to deliver said property at all times, or allege some valid excuse for inability to keep good his offer to deliver."

And in the case of American Soda Fountain Co. v.. Gerrer's Bakery, 14 Okla. 258, 78 P. 115, we said:

"'* * * But the right of the vendor to recover the purchase price is dependent upon the performance by him in good faith of substantially all the requirements on his part. He is not entitled to treat the property as belonging to the purchaser, and recover the contract price, except in case he has delivered the property, or in good faith tendered it according to the terms of the sale. If there is some condition to be by him performed which must be done before the possession or title can vest in the purchaser, then he cannot treat the property as that of the purchaser, and a failure on his part to perform such condition will defeat his right of recovery."

As we construe the amended petition the plaintiffs seek to recover a part of the purchase price resulting from the alleged sale of the personal property involved and seek at the same time to retain the possession of the same, which may not be done. Since the court has concluded that the amended petition for the reasons above stated fails to allege facts sufficient to constitute a cause of action against the defendants, or either of them, the judgment of the trial court is affirmed.

This court acknowledges the services of Attorneys R. D. Hudson, Lawrence Elder, and Hawley C. Kerr, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the court.

HALLEY, V. C. J., and WELCH, CORN, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.