GEORGE S. LINSCOTT, *Appellee*, v. H. F. MOSEMAN,
*Appellant.*

No. 16,977.

SYLLABUS BY THE COURT.

1. CONTRACTS—*Remedies for Breach of Executory Contract to
   Exchange Land—Damages—Specific Performance.* In an ac-
   tion brought to obtain redress for the breach of an executory
   contract to exchange land the plaintiff is not entitled to re-
   cover the value of the land he was to receive, instead of the
   land itself, the defendant being able to make conveyance ac-
   cording to the contract. The forms of the plaintiff's relief
   are specific performance of the contract· or damages for the
   loss of his bargain, measured by the difference in value of
   what he was to receive and what he was to give.

2. ABSTRACT OF TITLE—*Objections—Estoppel to Reject Title.*
   Ordinarily a vendee should make all his objections to the title
   disclosed by the abstract furnished him by the vendor with
   his first requirements. If, however, he should fail to do so,
   he will not be precluded from subsequently rejecting the title
   on other valid grounds, unless the vendor, acting upon the
   belief that the first requirements were final, has so changed
   his situation that it would be unjust to allow further objec-
   tions to be interposed.

3. SPECIFIC PERFORMANCE—*Unmarketable Title.* The equities
   in favor of a vendor must be very strong before a court will
   compel a vendee to accept or pay for an unmarketable title
   under a contract for a perfect title.

4. ABSTRACT OF TITLE—*Mineral Lease.* In June, 1908, an ab-
   stract of title disclosed a recorded oil-and-gas lease, dated in
   June, 1904, and running ten years and as much longer as
   mineral might be found in paying quantities. The lease pro-
   vided that one or more wells should be drilled within two
   years or that the lessee should pay twenty-five cents per acre
   per year for the land thereafter. On default in the per-
   formance of its condition the lease was to become void. *Held,*
   the abstract did not disclose a perfect title.

5. —— *Ex Parte Affidavit that Lease Was Void.* In order to
   perfect the title an *ex parte* affidavit was attached to the
   abstract, made by a person who claimed to know the facts and
   who stated that the lease was void because of noncompliance
   with its terms, no work having been done on the land under
   the lease. *Held,* the affidavit did not remove the cloud on the
   title created by the lease.

6. —— *Parol Evidence.* A vendee who has contracted for a perfect title can not be compelled to accept a title encumbered by a recorded oil-and-gas lease whose invalidity, if it be invalid, depends upon facts which, were the title impugned, the vendee would be obliged to establish by parol evidence.

Appeal from Jackson district court. Opinion filed April 8, 1911. Reversed.

### STATEMENT.

ON June 24, 1908, the parties to this litigation agreed in writing to exchange real estate at stipulated prices. That of the plaintiff is situated in the state of Oklahoma and was valued at $4250. That of the defendant is situated in the city of Holton and was valued at $4000. The defendant agreed to pay the difference in cash. Each party agreed to furnish an abstract showing perfect title to his land, free and clear of all encumbrances. Deeds were to be exchanged within two days after abstracts were furnished and found to show perfect title, but time was not made of the essence of the contract. Abstracts were furnished on June 25. Those of the Oklahoma property disclosed oil-and-gas leases dated June 21, 1904, running ten years and as much longer as mineral could be found in paying quantities. The leases provided that one or more wells should be completed in two years. If not, the lessee should pay twenty-five cents per acre per year thereafter, and on default in performance of conditions the leases were to become void. The plaintiff stated to the defendant that he had owned the land for two years, that no work had been done or payments made under the leases, and that they had been forfeited, to which the defendant responded, "all right." Within a few hours after the defendant had received the Oklahoma abstracts he returned them with a written memorandum of three minor requirements. He testified further as follows:

."When Linscott gave me abstracts to the Oklahoma lands I took them home, and after looking them over

returned them to him and told him there were some irregularities that he would have to fix up; that I was no lawyer and I would have to submit them to a lawyer, but until these irregularities were fixed up there would be no use of my hiring an attorney to go over the abstracts. I made note of the irregularities I had discovered on a slip of paper, which I handed to Linscott. We talked about the oil lease. I told him I did not think they made a perfect title. He said he had them examined by a lawyer and the abstracts had been pronounced good. I told him that when the irregularities I had pointed out were straightened out I would submit the abstracts to an attorney to see whether there was a perfect title or not. He said he was going to give me a perfect title."

The plaintiff gives a different account of the conversation.

The plaintiff then proceeded to try to perfect his title. In doing so he intended to include in his abstracts all matters necessary to appear in order to show perfect title in him, did not omit to have anything appear on the abstracts by reason of anything the defendant said or did, and believed he had included in the abstracts all matters necessary to appear in order to show a perfect title in him. The affidavit of one E. W. Miller was procured and attached to the abstracts, stating that the oil-and-gas leases were void because of noncompliance with their terms, no work ever having been done under them.

In the latter part of June or the first part of July the defendant notified the plaintiff that he did not believe the title to the Oklahoma land was good, and that the deal was off. On August 28 the plaintiff made tender of his abstracts and of a deed, which the defendant declined to receive. The plaintiff then sued for the value of the Holton property and the cash difference between the trading prices of that and the Oklahoma land. The petition contained, among others, the following allegations:

"Plaintiff further alleges that the said plaintiff, pursuant to the terms of said written contract, duly fur-

nished to the defendant abstracts of title to the said two tracts of land situate in Pottawatomie county, Oklahoma, mentioned and described in said written contract, and that upon the furnishing of said abstracts of title to the said tracts of land situate in Pottawatomie county, Oklahoma, the defendant objected to the sufficiency thereof and required certain affidavits to be obtained, showing identity of parties through whom the title ·had passed, and also required the affixing of a proper revenue stamp to one of the deeds included in the chain of title to said premises, all of which requirements were duly complied with by said plaintiff, and the plaintiff thereupon again tendered to the said defendant the abstracts of title, so as aforesaid amended and corrected, and which abstracts showed title perfect to each tract, vested in plaintiff. . . . Plaintiff further alleges that he has duly performed all the conditions of said written contract on his part to be performed, except in so far as he has been prevented from delivery of said deed and abstracts, so tendered to the said defendant, by the defendant's refusal to accept the same. . . . Plaintiff ·further alleges that he is still able and willing to deliver the said deed and abstracts so tendered by him to the said defendant, and thereby vest in the said defendant a perfect title to said premises therein described, . . . whenever the defendant will accept the same, and plaintiff brings said deed and abstracts into court for delivery to the defendant in accordance with such order or judgment of the court as may be made or rendered herein."

The value of the Holton property was alleged to be $4500. The prayer was for this sum and the agreed difference in value between the two properties, $250, making $4750 in all, with interest from the date of the tender. A prayer for general equitable relief was added.

On the trial the court instructed the jury, in substance, that if the defendant returned the abstracts to the Oklahoma lands with written requirements, if the plaintiff met those requirements, and if the defendant made no requirements except those specified in writing, such facts afforded sufficient proof that the contract to

furnish abstracts showing perfect title had been fulfilled. The court also instructed the jury that the measure of the plaintiff's damage was $4250, with interest from the time of tender. A verdict was returned for the plaintiff in the sum of $4560.47, and judgment was entered accordingly. The plaintiff brought his abstracts and deed into court for delivery according to the order of the court, but no order of any kind was made. The defendant appeals.

.H. F. Graham, T. F.. Garver, and R. D. Garver, for the appellant.

E. D. Woodburn, F. T. Woodburn, A. E. Crane, and Charles Hayden, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The plaintiff takes the position that he is a vendor of land suing for reparation on account of the refusal of the vendee to comply with the contract. The contract is wholly executory, and no claim is made that the vendee is unable to perform. In such cases the vendor is entitled to redress in one of two ways: He may have his contract enforced according to its terms and receive whatever he has contracted for, or he may have damages for the loss of his bargain. If he has sold for cash he may have the purchase money. In such a case he must allege tender and willingness and ability to perform on his side, so that the action becomes in all essential respects one to compel the vendee specifically to perform. (See Lumber Co. v. Town Co., 51 Kan. 394.) If he has agreed to take other real estate he may compel the vendee to convey it to him. But, if the contract be one for the exchange of lands, neither the vendor nor the court has any authority to substitute for it, in legal effect, a contract to sell for cash, by giving the vendor the value of the land instead of the land itself. He must either take the land or take whatever damages he has sustained. In the latter case

35—84 KAN.

the measure of damages is the difference in value between what he was to receive and what he was to give.

"Where two parties enter into a contract for the exchange of land and the payment of money, and afterward one of them without sufficient reason refuses to perform on his part, and the property which he was to give is of greater value than the property which he was to receive, and the other party sues him for damages, *held*, that the measure of damages is the difference in value between the property which the plaintiff was to receive and that which he was to give in consideration therefor." (*Bierer ·v. Fretz,* 32 Kan. 329, syl. ¶ 8.)

What the remedies of a vendor may be under circumstances other than those here presented need not be discussed. The instruction given the jury relating to the measure of damages, and upon which the verdict rests, was erroneous.

Ordinarily a vendee should make all his objections to the title disclosed by the abstract furnished him when he returns it with his requirements, but the law does not put him into a straight jacket and absolutely forbid him to take any other course, irrespective of the attitude of the vendor. If the defendant's testimony be true (and that was a matter for the jury), when he returned the abstracts with certain written requirements he verbally questioned the title because of the oil-and-gas leases, and reserved the right to satisfy himself at a later time regarding them. The plaintiff made no complaint of the proposed course of conduct, but said he was going to give a perfect title, and proceeded to make preparation accordingly, uninfluenced by what the defendant said and did. In virtually withdrawing this evidence from the jury and binding the defendant by the arbitrary rule stated in the instructions the court erred.

Since the judgment must be reversed, the question arises as to what the direction to the trial court shall be.

The oil-and-gas leases constitute a cloud on the plain-

tiff's title.  The affidavit attached to the abstract does not remove this cloud from the record.  Who Miller is or where he resides does not appear, and he might not be available as a witness for the defendant if the latter were obliged to resist a claim made under the leases. Some of the limitations upon the force of affidavits used in connection with abstracts of title are stated by War-velle as follow:

"There is, however, another class of affidavits that are resorted to by conveyancers under a choice of difficulties, and which frequently figure on the records and in the abstract.  These are the *ex parte* sworn statements of individuals respecting some question raised by the instruments, usually relating to deaths, marriages, births, etc., concerning which no other or better evidence can be found.  Family records are not universal, nor even where, as is the custom of many of the states, a record of births, deaths and marriages is kept by proper officers, can the requisite information be always obtained. . When such is the case resort must be had to the next best and most available testimony, which is usually supplied by the affidavit of some person setting forth his knowledge of the nature of the matters under inquiry.  Such an instrument, it is true, possesses no legal validity, and, not being made under the sanction of a court or in any legal proceeding, is not strictly evidence for any purpose, yet, being usually all that can be adduced, it has been, as it were, by common consent of the profession, adopted as evidence in the examination of titles and the testimony taken as corroborative evidence of general reputation, concurrent possession, etc." (Warv. Abstr. p. 313.)

Except in cases of the kind indicated, a vendee can not be compelled to accept a title depending for its validity upon parol evidence which he may not be able to command when needed.

"It has been frequently held that if parol evidence should be necessary to remove any doubt as to the validity and sufficiency of the vendor's title, the purchaser can not be compelled to complete the contract.  He can not be required to take a doubtful title which he must fortify, if impugned, by resorting to evidence perishable in its nature, and possibly unavailable to him

when the necessity for it occurs. It must be observed, however, that a title is not necessarily doubtful simply because it requires to be supported by parol testimony. As a general rule, for example, title by inheritance depends principally upon matters *in pais*, or facts resting in the knowledge of witnesses. If those facts be clearly sufficient to establish the right of the vendor as heir, it is apprehended that the purchaser could not object to the title simply because it could not be established by record evidence. But a different case is presented where the fact of inheritance itself is in doubt. There may be circumstances to show that the ancestor is not dead, or that he has left a will, or that the vendor is not sole heir. Then it is that the title becomes unmarketable from the necessity of parol proof to remove the doubts which surround it." (Maupin Mark. Tit. Real Estate, 2d ed., § 289.)

The plaintiff claims that the defendant is trying to "mend his hold" by objections to the title not specified in the written requirements, and that he is estopped from so doing upon well-known principles illustrated in numerous decisions. The difficulty with this position is that certain indispensable elements of estoppel are wanting. The defendant's conduct was not relied on, the plaintiff did not change his own situation because of it, and he has suffered nothing in consequence of it. He did not even incur the expense of this litigation upon the strength of it. No estoppel is pleaded as a ground of recovery. Although the petition refers to the making of the written requirements, it does not declare that the plaintiff regarded those requirements as final and shaped his course accordingly. On the other hand, the theory of the petition is that the plaintiff has a perfect title, that he made his abstracts show a perfect title, that his deed will convey a perfect title, and that the fault of the defendant lies in not accepting and paying for a perfect title according to his contract so to do. Under these circumstances the plaintiff is the one who is really trying to mend his hold, and this for the purpose of obtaining full compensation for what is in fact a clouded title.

The court desires to say here that the equities in favor of a vendor must be very strong before it will compel a vendee to take or pay for an unmarketable title under a contract for a perfect title. The plaintiff in the present case does not want damages for the loss of his bargain. In effect he seeks specific performance of the contract, and should he recover the defendant will be forced to accept a clouded title. In such cases the course pursued by Lord Chief Baron Alexander in the case of *Warren v. Richardson,* (Court of Exchequer in Equity) Younge's Rep., appears to be just. The suit was brought to compel a lessee to accept a lease. By his conduct he had waived the right to object to the lessor's title, and specific performance was decreed. On reference to a master to settle the terms of the lease it was discovered that the lessor could not make title. The opinion reads:

"This is a suit for a specific performance. The court was of opinion that the defendant had waived what he would otherwise most clearly have had a right to, an inquiry into the plaintiff's title; that is, into his power to make a valid lease, according to his agreement; in other words, to put upon the plaintiff the burden of showing his title, and proving it to be a safe one. Though the court thought the defendant had by his conduct waived that right, it has now come out collaterally, but I think clearly, that the plaintiff can not make a title according to his contract. It would be a great hardship upon a party to force him to accept a title which is ascertained to be defective. It would be contrary to all the rules which prevail upon the subject of specific performance. The principles upon which courts of equity have proceeded on the subject of specific performance do not make a decree for a specific performance the necessary consequence, under all circumstances, of an agreement. Circumstances of hardship often prevent it. They recollect that the party is not without remedy, for, though he should be refused a specific performance, he has left to him his action upon the agreement. What creates the difficulty in this case is that the conduct of the party had barred his right to the usual investigation into the title; and this

defect is a defect of title. If the objection had been to the conveyance merely, the defendant would have had the full benefit of it without any doubt. But the objection is of another description. It is an objection to the title. It stands decided upon this record that the defendant had waived his right to call upon the plaintiff for the production of his title; on the other hand, it is clear that the plaintiff can make no good title, and, if the defendant took it, it would be defective.

"I have somewhat hesitated as to the fit course to be pursued under these circumstances. As I have stated, I have not met with any authority exactly in point to conduct me. I think that the most just course, and the best supported by the rules prevailing on this subject of specific performance, and which is sustained by the greatest variety of analogies, is, in consequence of its appearing that the plaintiff can not make the defendant a good title, to refuse a decree for a specific performance. A waiver of the defendant's right to make the plaintiff produce his title does not seem necessarily to import that he will accept the title, though it should manifestly appear to be bad. I am of opinion, therefore, that I ought not to decree the execution of the lease settled by the master, or any other lease, but that the bill should be dismissed." (p. 7.)

The dispute regarding the sufficiency of the plaintiff's title is one of law only. The facts which defeat the plaintiff's claim of estoppel were found specially by the jury. It is almost three years since the contract was made. Considerable time would be required to perfect the plaintiff's title, if he seemed inclined to do so, and it is not probable that the contract would then represent to either party anything like what it did when they engaged themselves. Therefore the court has concluded to leave each one in the possession of what he has.

The judgment of the district court is reversed and the cause is remanded, with direction to enter judgment for the defendant.