### SIPE v. GREENFIELD.

No. 16281—Opinion Filed March 2, 1926.

1. **Appeal and Error—Review—Sufficiency of Evidence in Law Action.**

A judgment reached in the trial of a law action to the court will not be reversed on appeal if there is any competent evidence which reasonably tends to support the judgment.

2. **Oil and Gas—Contract for "Good Title" to Royalty Interest Breached where Subject to Real Estate Mortgage.**

The defendant is guilty of a breach of his written contract to convey a good title to an undivided royalty interest created by an oil and gas lease, where the defendant tenders such royalty interest subject to a prior, valid, existing real estate mortgage.

3. **Same—Disposition of Cause.**

Record examined: held, to be sufficient to support the judgment of the trial court as modified by this opinion.

(Syllabus by Williams, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Kay County; Claud Duval, Judge.

Action by E. J. Greenfield against Phillip Sipe for recovery of money upon an alleged breach of warranty of title. Judgment for plaintiff, and defendant appeals. Modified and affirmed.

W. W. Davis, for plaintiff in error.

R. O. Wilson and F. C. Duval, for defendant in error.

Opinion by WILLIAMS, C. The parties herein will be referred to as they appeared in the trial court.

Plaintiff in his petition prayed judgment against the defendant in the sum of $2,000 for money paid by the plaintiff to the defendant for a 1-16th royalty interest in certain lands, and based his right of recovery upon an alleged breach of warranty of title in that the defendant agreed by written contract to furnish plaintiff with a good title, and that title to the same was not good for the reason that there was an existing mortgage on said real estate.

Defendant admits the ownership of the land upon which the royalty contract was executed, and also admits that at the time of the execution of same there was a mortgage lien against the land in the sum of $3,000; and he further alleged that the contractual relation was that of an option to said plaintiff for such purchase for a period of 30 days, for which the plaintiff agreed to pay the defendant the sum of $1,000; that $800 was paid in cash, and that a payment of $200 was to be made on or before January 15, 1923; and that prior to the expiration of said option the plaintiff negotiated with the defendant orally for an additional 30 days' option, and agreed to pay the defendant the sum of $1,000, but later it was agreed between plaintiff and defendant that $500 of said option money should go to and be applied to the purchase price of $35,000, and the defendant alleges that in case the full purchase price was not paid within the option period, then all moneys paid by plaintiff upon said contract were to be retained by the defendant as option money.

The defendant alleged that, at the time of the execution of the written contract sued upon herein, he executed to the plaintiff a royalty conveyance, in which the plaintiff recognized the existence of the mortgage upon said premises and accepted said royalty conveyance subject to said mortgage; and that prior to any payments on the purchase price of the lease the plaintiff, or his agent, was apprised of the existence of the mortgage upon said premises.

A jury was waived by all parties and the case submitted to the court, who, after hearing the evidence, rendered a judgment in favor of the plaintiff and against the defendant for the sum of $2,000. Motion for new trial was heard and overruled, and defendant brings the case to this court for review.

The defendant presents four asignments of error as grounds for reversal of the judgment. The principal contention, however, and the only one necessary to consider, is that no covenant of warranty is embraced or contained in the royalty contract against a prior, subsisting mortgage on said premises.

The provision of the contract construed by the court, and the only one material here, is as follows:

"It is agreed by both parties hereto that in case title to the above-described land is not good, that down payment above mentioned shall be returned to said party of the second part; and it is further agreed that should said title be good, and should said party of the second part fail to make payment on balance of consideration within the time specified, then the down payment shall be retained by party of the first part as liquidated damages."

There is no controversy, in fact, it is admitted, that a certain amount of money was paid by the plaintiff to the defendant: the plaintiff contending that $2.000 was paid and was to be applied as a part payment on the purchase price of said lease, while the defendant claims that $800 was the only down payment made under and by virtue of the terms of the contract; that the $200 and $500 payments were deferred payments, and that one $500 payment was a consideration for an extension of time of 30 days.

It is conceded that all of such payments were made prior to January 31, 1923, and that the contract was extended 30 days from February 1, 1923. It is further agreed between the plaintiff and defendant that on the day of the execution of the contract there was a mortgage of $3,000 on the land covered by the contract, and that said mortgage was in full force and effect on the date of the execution of the contract and was unsatisfied on the date of the trial of the case.

The evidence disclosed the fact that when the plaintiff attempted to sell said royalty interest he was confronted with the proposition that the title was defective, in that the real estate upon which plaintiff held said contract was mortgaged. That plaintiff called upon the defendant and requested said defendant to clear the title to said real estate by the satisfaction of said mortgage, and that the defendant refused so to do.

The question to be determined is, Was the title of the plaintiff, incumbered as it was by mortgage, a good title within the meaning of the contract between the plaintiff and defendant?

This court had before it in the case of Brady et al. v. Bank of Commerce of Coweta et al., 41 Okla. 473, 138 Pac. 1020, the question as to the kind of title the vendor was bound to convey by a contract of sale. It was held that, in the absence of an express provision indicating the character of title provided for by a contract of sale of real property, the implication was that a good or marketable title, in fee simple, is intended in all executory contracts. The effect of the rule applied in the Brady Case

is that good title and merchantable title are synonymous terms, both meaning a clear title, free from incumbrance which would so cloud the title as to prevent a sale or disposition of the leasehold.

In the case of Martin v. Spaulding et ux., 40 Okla. 191, 137 Pac. 882, the court in the first paragraph of the syllabus held:

"The vendee, in a contract for the sale of real estate, is not bound to take a title which is not marketable. He may, however, accept a deed and look to the vendor upon his warranty for compensation for any loss he may sustain through inability to give a perfect title; but he also has the right to abandon the contract and refuse to make the purchase."

The Supreme Court of California in the case of John Reynolds v. Borel, 86 Cal. 538, 25 Pac. 67, in defining what constitutes a good title, in the second paragraph of the syllabus, said:

"A title to be good should be free from litigation, palpable defects, and grave doubts, should consist of both legal and equitable titles, and should be fairly deducible of record."

In the case of Campbell v. Harsh, 31 Okla. 436, 122 Pac. 127, this court adopted the language of the California case, above cited, and made the foregoing quotation a part of the syllabus, with the exception that where the California court uses the word "good" Justice Turner substitutes the word "perfect".

And in Thompson's work on Real Property, vol. 5, section 4296-A, we find the following definition:

"As between vendor and purchaser it means the legal estate in fee, free and clear of all valid claims, liens or incumbrances whatsoever. * * * A good title means not merely a title valid in fact, but a marketable title which can again be sold to a reasonable purchaser or mortgaged to a person of reasonable prudence as security for a loan of money. * * * In a contract to convey a good title, the word 'good' comprehends all that the word 'clear' does, and the term 'clear title,' as used in such contract, means that there are no incumbrances on the land."

The interest of the plaintiff under his contract was junior and inferior to the rights of the mortgagee, and a foreclosure of the mortgage divesting the mortgagor of all right, title, and interest in and to the fee in the real estate upon which the plaintiff held such royalty interest would defeat the rights of the plaintiff.

It may be urged that this contingency might never arise, but the possibility that

it might is the thing that casts a' cloud upon the plaintiff's title.

In the case of Reynolds v. Borel, supra, the first paragraph of the syllabus is as follows:

"Where a contract for the sale of land was conditioned that if the title was found imperfect, and could not be made good, the deposit made by the purchaser would be returned, and certain imperfections were found in the abstract of title, which there was a reasonable probability might give rise to litigation, and which made the title subject to grave doubts, and which the vendor refused to remedy or remove or warrant the purchaser against, an action will lie in favor of the purchaser to recover the amount of the deposit made by him."

Defendant insists that no judgment is authorized under the contract herein sued upon, in excess of $800, this being the only down payment made. With this contention we cannot agree. We think a proper construction of the contract is that all payments made on the purchase price during the life of the option would be down payments, and, we therefore conclude that not only the $800 payment but also the $200 and the $500 payments were down payments.

We are of the opinion that the trial judge was in error in rendering judgment for the plaintiff in the sum of $2.000, it being an admitted fact that one $500 payment included in said judgment was a consideration for an extension of time of 30 days, and this payment was indorsed on the written contract as a consideration for such extension of time, and the same should not have been included in the judgment as a payment on the purchase price.

Therefore, upon the plaintiff filing a remittitur of $500 within 30 days, the judgment will be affirmed, as modified, otherwise the same will be reversed and remanded.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 879 §2853; 2 R. C. L. p. 194; 1 R. C. L. Supp. p. 433; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 79. (2) 27 Cyc. p. 743 (Anno.) (3) 4 C. J. p. 1150 §3157.