**JENNINGS et al. v. NEW YORK PETROLEUM ROYALTY CORP.**

No. 23389.   Nov. 27, 1934.

I. C. Saunders and Neal E. McNeill, for plaintiffs in error.

Roscoe E. Harper and Gentry Lee, for defendant in error.

PER CURIAM. This case was tried in the district court of Tulsa county, upon an amended petition and an amendment to the amended petition filed by William P. Jennings, Walter R. McClellan, and Rufus C. Lillard, as plaintiffs. The suit is for specific performance of contract for the purchase of a five-acre mineral interest in certain lands in Pottawatomie county, Okla., and to recover the sum of $8,000 as the alleged purchase price.

The amended petition contains this clause:

"The plaintiffs and defendant with its duly authorized agents entered into an oral contract and agreement, whereby the plaintiffs agree to sell and the defendant agreed to purchase from said plaintiffs the oil and gas royalty and mineral rights situated in, to and under the following property, situated in Pottawatomie county, state of Oklahoma, to wit:

"A full five (5) acre oil and gas royalty and mineral interest in the east three-fourths (E. ¾) of the east half (E.½) of the northwest quarter (N.W.¼) and the northwest quarter (N.W.¼) of the northeast quarter (N.E.¼) and lots two (2) three (3)

and four (4) in section twenty-one (21) township eight (8) north, range five (5) east.

"For the stipulated and agreed consideration of $8,000."

The amended petition contains copies of the following telegrams, to wit:

"Tulsa, Okla. Jan. 20-28
"W. P. Jennings
"Shawnee, Okla.

"We agree to purchase from you and you agree to sell and deliver to us a full five-acre mineral interest in east three-fourths of east half of northwest and northwest northeast of lots two, three, and four twenty-one eight five one hundred forty five acres more or less for total consideration of eight thousand dollars subject to approval of title by our attorneys please confirm by wire.

"New York Petroleum Royalty Corpn.
"By A. H. McCreery."

"New York Petroleum Royalty Corporation,
"Tulsa, Okla.

"This is to confirm your purchase through W. P. Jennings, five acre undivided royalty interest east three fourths of east half northwest quarter and northwest quarter of northeast quarter and lots two, three, and four all in section twenty-one township eight north range five east for a total consideration of eight thousand dollars subject to title being merchantable.

"Walter R. McClellan."

Attached to the amended petition as exhibit A is a mineral or royalty deed executed on the 20th day of January, 1928, by Walter R. McClellan, which was duly acknowledged and appears to be in legal form and in favor of the defendant for a full five-acre oil and gas royalty and mineral interest in the land described in said amended petition. This mineral deed contained this exception clause:

"Said land being now under an oil and gas lease executed in favor of Indian Territory Ill. Oil Co., it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes 5/145.19 of all of the oil royalty, and gas rentals or royalty due and to be paid under the terms of said lease."

Attached to the amended petition as exhibit B is a copy of a draft as follows:

"The State National Bank
"Shawnee, Okla. Jan. 20, 1928.

"Payable on or before Jan. 23, 1928. Pay to the Order of State National Bank, Shawnee, Oklahoma, _____ $8,000.00 Eight Thousand & no/100 _____ Dollars
"With exchange and collection charges.
"Walter R. McClellan.

"To: New York Petroleum Royalty Corp.,
"Exchange National Bank,
"Tulsa, Oklahoma.
"Customer's Draft."

The amendment to the amended petition of the plaintiffs further alleges that a certain mortgage appearing of record against the land involved in this suit in the sum of $2,300 had been paid, but that plaintiffs did not know whether the release of said mortgage properly executed had been placed of record, and that the plaintiffs informed the defendant of this fact and the defendant company, through its agent, A. H. McCreery, had full knowledge of said fact, and agreed that if the title was merchantable with the exception of said mortgage he would accept the same. This alleged agreement, if made, seems to have been oral and not in writing. The amended answer and the amendment to the amended answer of the defendant in brief consists of:

"1. General denial.

"2. Denies that the plaintiffs were the owners on January 20, 1928, of the oil and gas property described in plaintiff's petition.

"3. Denies that the defendant entered into any oral agreement as alleged in plaintiffs' petition, or any agreement for the purchase of said property.

"4. That such purported agreement, if any was in fact made, was illegal, unenforcible and void under the statutes of fraud of the state of Oklahoma, for the reason that such purported agreement was for the purchase of an interest in realty and the same was not reduced to writing nor was there any such memorandum of said contract reduced to writing and signed by the defendant.

"5. That such purported agreement, if made, required the plaintiffs to furnish to the defendant a complete abstract of title to said property, showing merchantable title in the party or parties offering to convey the same and that the abstract of title submitted to the defendant was not complete and did now show merchantable title to said property and the defendant was justified in refusing the same."

To the amended answer and the amendment to the amended answer of the defendant, the plaintiffs and the intervener filed reply briefly as follows:

"1. A general denial of all new matter set up in the answers of the defendant.

"2. An oral agreement by the defendant that if the abstract disclosed that the mortgage had not been released, the defendant would waive the same or accept evidence that the mortgage had been paid.

"3. That the defendant did not refuse the title on account of the said mortgage and set up a telegram addressed to W. P. Jennings as follows:

"'Tulsa, Okla. 149 P. Jan. 22, 1928.

"'W. P. Jennings

"'Well known Shawnee Okla.

"'We hereby withdraw, revoke and rescind our offer to purchase five acres mineral interest in east three quarters of east half of northwest quarter and northwest quarter and northwest quarter northeast quarter and lots two, three and four of section twenty-one township eight north range five east Pottawatomie county, Oklahoma contained in our telegram of January twentieth nineteen twenty-eight.

"'New York Petroleum Royalty Corp.

"'By A. H. McCreery.

"'420 P.'

"4. That the defendant having refused to carry out said contract on the ground other than that title was not merchantable thereby waived the fact of merchantability of the title."

On these issues the case went to trial before a jury. The trial judge, after hearing all the evidence of the plaintiffs and intervener and the evidence of the defendant, and at the close of all the evidence, sustained the motion of the defendant for a directed verdict upon the grounds that the evidence was wholly insufficient to entitle the plaintiffs to any relief in the premises. Thereupon, the jury returned a verdict in favor of the defendant. The trial court then rendered a judgment in favor of the defendant and adjudged and decreed that the plaintiffs and the intervener take nothing by their suit; to all of which the plaintiffs and intervener duly excepted.

The plaintiffs and intervener filed their motion for a new trial in due time, and the case is now before this court on appeal from the said judgment of the district court of Tulsa county.

The petition in error alleges as grounds for reversal that the court erred in instructing the jury to return a verdict in favor of the defendant; that the court erred in admitting certain evidence on the part of the defendant; that the court erred in refusing to admit competent and legal evidence in favor of the plaintiffs; that the court erred in overruling their motion for a new trial.

It appears to the court that the two vital issues involved in this case are, first, whether there was an enforceable contract entered into between the plaintiffs and the defendant; and, second, whether the plaintiffs furnished an abseract showing a merchantable title.

The record shows that all writings passing between the parties to this suit consisted of the telegram of the defendant company to W. P. Jennings dated January 20, 1928, and the telegram of Walter R. McClellan to the defendant company of the same date; the telegram of the defendant company to W. P. Jennings dated January 22, 1928, wherein the defendant company revoked and rescinded its offer to purchase certain mineral rights in lands named in the first telegram of January 20th; the telegram of the defendant company to Walter R. McClellan, dated January 22, 1928, wherein the defendant company refuses the offer of Walter R. McClellan to sell certain royalty interest named in his telegram of January 20th, and the mineral deed and draft for $8,000. In short, if there be a valid contract in writing for the purchase of real estate, such contract must rest on the two telegrams of January 20th. In the first telegram the defendant company states, "We agree to purchase from you and you agree to sell to us a full five acres mineral interest." This telegram was addressed to W. P. Jennings at Shawnee. The evidence shows that Walter R. McClellan took a mineral deed to 50 acres on the land involved in this suit; that he took this title partly in his own right and partly as trustee for the other plaintiffs in this case, including the intervener. That later, and prior to January 20, 1928, Walter R. McClellan made and delivered deeds to the other plaintiffs for their respective interests in this land, but such deeds had not been placed of record, except the deed of W. P. Jennings. Jennings testified that he placed his deed of record. The abstract was offered in evidence and this abstract shows that on the 5th day of January, 1928, Walter R. McClellan conveyed to Wm. P. Jennings 12.5/145.10 interest in and to all of the oil and gas and other minerals in and under the lands involved in this suit, which deed was filed for record on January 6, 1928. The abstract later, and on the 13th day of January, 1928, shows that Wm. P. Jennings conveyed 2/145.10 interest to the United Producing Company. The abstract does not show any other conveyance by Wm. P. Jennings. Hence, the abstract shows that he still owned 10.5 acres or 10.5/145.10 of the whole mineral title in this land.

Jennings himself did not answer the telegram of the defendant company to him, but the same was answered by Walter R.

McClellan. Jennings says he assisted McClellan in preparing this second telegram. McClellan tendered a mineral deed, but Jennings tendered no mineral deed. The first telegram of the defendant company to Jennings does not correctly describe the land involved in this suit, omitting 40 acres and incompletely describing the lots. The telegram of Jennings says, "Subject to approval of title by our attorneys." The telegram of McClellan correctly describes the property, and says, "subject to the title being merchantable." The question arises, Do these two telegrams plus the tender of the mineral deed by McClellan make a binding and enforceable contract for the purchase of real estate or an interest therein under the statute of fraud? This statute reads as follows:

"The following contracts are invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party to be charged or by his agent:

"Fifth, an agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein; and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing. subscribed by the party sought to be charged." Section 9455, Okla. Stat. 1931.

From the authorities it appears that the statute of frauds applies to the vendee as well as the vendor, and the words, "the party to be charged" have been generally defined to mean the party against whom the contract is sought to be enforced, whether this party be the vendor or the vendee. A very recent decision on this point is by Chief Justice Riley, in the case of Davis v. Holman, 163 Okla. 59, 20 P. (2d) 575. In this case the vendor, as plaintiff, sought specific performance of a contract for the sale of real estate against the defendant, as vendee, under an alleged contract of purchase. The syllabus of the court in this case is as follows:

"The words 'party to be charged' as used in section 5034, C. O. S. 1921, relating to contracts for the sale of real property, mean the party against whom the contract is sought to be enforced."

The court in the above case holds that in a suit for specific performance against the vendee, the execution by the owner and vendor of a deed and placing the same in a bank together with a written memorandum of the agreement signed by the owner of the land only, is not sufficient to bind the alleged vendee. This case in part overrules the case of Schuerer v. Crockett et al., 108 Okla. 218, 236 P. 30, cited by counsel for plaintiffs in error.

"Where suit is brought on a parol contract for the sale of an interest in land, proof that the owner executed a deed thereto and notified the purchaser thereof is not sufficient to take the contract out of the operation of the statute of frauds." Harris v. Arthur, 36 Okla. 33, 127 P. 695.

To the same effect is the case of Edgar v. Reeser, 46 F. (2d) 277.

An early case on the questions involved in this suit is that of Halsell v. Renfro, 14 Okla. 674, 78 P. 118, in which the court says:

"2. A complete contract, binding under the statute of frauds, may be gathered from letters, telegrams, and writings between the parties relating to the subject-matter, and so connected with each other that they may be said to fairly constitute one paper relating to the contract.

"3. A memorandum, to be sufficient under the statute of frauds, must be complete in itself, and leave nothing to rest in parol.

"4. A contract for the sale of lands which a court of equity will enforce specific performance of, must be certain in its terms, and that certainty required has reference to the parties contracting, the terms of the sale and the description of the property, and whenever the property to be conveyed cannot be identified as the property referred to in the contract, specific performance will be denied."

"A complete contract binding under the statute of frauds may be entered into by letters, telegrams, or other writings between the parties, relative to the subject-matter of the contract, and so connected with each other that they may be fairly said to constitute one paper relating to the contract, but in order to be sufficient the letters, telegrams, and writings relied upon must, by reference to each other, disclose every material part of a valid contract, and must be signed by the party sought to be charged, must set out the parties, the subject-matter, the price, the description of the property, terms, and conditions, and leave nothing to rest in parol." Heacock v. Kniesley et al., 101 Okla. 135, 224 P. 184.

To the same effect as the above two cases are the following decisions of the Supreme Court of the state of Oklahoma: Baker v. Haswell & Taylor, 36 Okla. 429, 128 P. 1086; Strack v. Roetzel, 46 Okla. 695, 148 P. 1017; Mason Motors v. Cosden et al., 105 Okla. 244, 231 P. 890.

27 C. J. 275, states this rule:

"The memorandum must state who are

the parties to the contract, either by naming them, or by so designating or describing them that they may be recognized or identified without fair or reasonable doubt or dispute. It must contain the names or sufficient descriptions of both parties to the contract, not only the person to be charged, but also the person in whose favor he is to be charged. An agreement for a lease should show both the lessor and the lessee; and a memorandum of a contract for sale must show who is the buyer and who is the seller."

It will be noted that the telegram of the defendant company was an offer to purchase from W. P. Jennings. Jennings owned 10.5 acres and was in a position to accept the offer. But he presented the telegram to Walter R. McClellan, and McClellan answered the telegram in his name and tendered the mineral deed in his name as grantor. Jennings did not answer the telegram and did not tender any mineral deed in which he was a grantor. There does not seem to be a sufficient identity of parties as to the vendor or grantor. To illustrate, suppose A and B owned a tract of land jointly, each owning an undivided one-half interest. C sends a telegram to A offering to buy his interest at a stipulated price. A passes this telegram to B, and B answers the telegram accepting the offer of C and tenders to C the deed of B. Then C refuses to accept the deed of B. Can B sue C for specific performance of a contract of purchase? We think not, because C never offered to purchase from B.

"Where a copartnership contracts to convey to another by its warranty deed a certain tract of land, the title to which at the time is vested in some third party, the procuring of the conveyance of the land by such third party with his warranty will not answer the requirements. The party who is to receive the deed is entitled to have the warranty of him who agreed to convey as a further security of title." Farm Land Mtg. Co. v. Wilde, 41 Okla. 45, 136 P. 1078.

"Now, the tender made was of a quitclaim deed executed by the bank to Mrs. Myers, not the deeds of Mrs. Millsap which were deposited in escrow to be delivered to Mrs. Myers when she paid the consideration in full. This was clearly not a sufficient tender of performance. Mrs. Myers was entitled, under the contract, to Mrs. Millsap's deeds, and a proffer of the delivery of the deed of some other person to the premises was not equivalent to a proffer of performance." Sheridan State Bank v. Rowell, 212 Fed. 529.

"But a third party, a stranger to the undertaking, could not discharge the obligation, though in a position to convey a good and sufficient title, for the very good reason that the vendee has not contracted for his deed, but for that of the vendor, or, in case of his death, that of his heirs, legatees, or personal representatives." Wollenberg v. Rose, 45 Ore. 615, 619, 78 P. 751, 752.

In addition to the want of identity of party vendor, there is a wrong description of the land in the telegram of the defendant company to Jennings, and the telegram of the defendant company to Jennings provides for purchase "subject to approval of title by our attorneys," while the telegram of acceptance of McClellan states "subject to title being merchantable." We think there is some difference between the furnishing of a title to be approved by the attorneys of the purchaser and the furnishing of a merchantable title. The mineral deed tendered by McClellan provides that the deed is subject to an existing oil and gas lease. There is nothing in the telegram providing for such exception, and we find nothing in the pleadings and nothing in the parol evidence showing that defendant company agreed to accept the mineral deed subject to an existing oil and gas lease. The court does not mean to hold that parol evidence would be admissible to prove such exception. There is nothing in the telegram to show that the title was to be accepted on proof of the payment of an unreleased mortgage. The plaintiffs allege that the defendant orally agreed to accept proof of payment in lieu of release of record for the $2,300 mortgage. A. H. McCreery seems to have handled all of the transactions for the defendant company. None of the plaintiffs had any dealings directly with A. H. McCreery before or on the day of the sending of these telegrams. The plaintiffs did have an agent or broker by the name of L. H. Witmer in Tulsa, who did have conversation directly with A. H. McCreery about this deal. L. H. Witmer testified that he advised A. H. McCreery that this $2,300 mortgage had been paid, but was probably not released of record, and when asked what was said about that on behalf of Mr. McCreery he replied, "I haven't a recollection that Mr. McCreery made any statement whatever."

The court does not think that the testimony of the plaintiffs shows that the defendant company ever agreed orally or otherwise to waive this unreleased mortgage. Telegrams are quite often too brief to make an enforceable contract.

The court therefore finds that there is no valid and enforceable contract under the statute of frauds against the defendant company, for the reason that there is no iden-

tity of party vendor, a variation in the description of the land, a variance in the kind of title to be furnished and not complete in itself and containing no provisions with reference to existing oil lease and mortgage of record unreleased.

There is nothing in the record to take this case out of the statute of frauds, such as going into possession of the premises or making any valuable improvements, or the acceptance of the mineral deed.

The record shows that the plaintiff sent an abstract to the property set forth in the petition of the plaintiffs to the Exchange National Bank of Tulsa, and that the same was delivered to the attorneys for the defendant company on the 21st day of January, 1928, but there is no evidence that the attorneys for the defendant company approved the title as shown by said abstract as provided in the telegram of the company to W. P. Jennings. This abstract was offered in evidence and is a part of the record in this case. This abstract shows that in 1923, Sarah J. Eddy and husband executed an oil and gas lease on the premises involved in this suit in favor of Clyde H. Gordon for a term of ten years. The abstract also shows that this oil and gas lease was duly assigned by Clyde H. Gordon to the I. T. I. O. Co., and that such lease has never been released of record. The mineral deed of Walter R. McClellan is made subject to this oil lease.

The abstract shows that in the year 1924, S. J. Eddy and husband executed a mortgage on the premises involved in this suit to the Equitable Farm Mortgage Company, a corporation, which mortgage was duly filed for record the same year. The abstract further shows that the Equitable Farm Mortgage Company assigned this mortgage to Anna M. Brown, which assignment was duly filed of record the same year. The plaintiffs offered in evidence a release of this mortgage by Anna M. Brown. This release was executed on the 18th day of January, 1928, but was not filed for record until February 17, 1928, nearly one month after the delivery of the abstract. Consequently, the abstract did not show a release of this $2,300 mortgage.

The telegram of McClellan provided that the title should be merchantable. The court is of the opinion that the abstract did not show merchantable title in McClellan for the reason that there was an unreleased oil and gas lease of record, and for the further reason that there was a recorded mortgage in the sum of $2,300, which was not released of record as shown by the abstract.

"A perfect title is one free from litigation, palpable defects, and grave doubts, and consists of both legal and equitable title fairly deducible of record." Campbell v. Harsh, 31 Okla. 436, 122 P. 127.

And further the third syllabus paragraph by the court is as follows:

"A purchaser under a contract to make a perfect title is not required to resort to evidence dehors the record. It is not sufficient that the title tendered is capable of being made good by the production of affidavits or other oral testimony. It must be good of record. And where specific performance is granted of a contract upon the tender of an abstract capable of being made good by the production of affidavits or other oral testimony only, held, that the purchaser should not have been required to accept such title, and that the court erred in granting specific performance." Campbell v. Harsh, supra.

"A 'merchantable title' is synonymous with a 'perfect title' or a 'marketable title.'

"A merchantable title is one free from litigation, palpable defects, and grave doubts, and consists of both legal and equitable title fairly deducible of record." Pearce v. Freeman, 122 Okla. 285, 254 P. 719.

"Where a contract is made for the execution and delivery of an oil and gas lease on certain lands, and the contract provides that one-half of the purchase price shall not become due and payable until the vendor shall furnish to the vendees 'an abstract showing that vendees have a good and valid oil and gas lease upon the premises described,' and suit is brought to recover the balance of the purchase price, the vendor will not be permitted to show by evidence outside the abstract that his title is good, but he must show by the abstract tendered that he has complied with his contract." Miller v. Scott, 134 Okla. 278, 273 P. 363.

"The defendant is guilty of a breach of his written contract to convey a good title to an undivided royalty interest, created by an oil and gas lease, where the defendant tenders such royalty interest subject to a prior, valid, existing real estate mortgage." Sipe v. Greenfield, 116 Okla. 241, 244 P. 424.

"There was an outstanding oil and gas lease of record and an assignment thereof to a trustee. The trustee had executed a release thereof. The records disclosed that the powers of the trustee were defined by a declaration of trust, and whether the trustee had power to execute such release did not appear of record. This oil and gas lease was a cloud upon the title, notwithstanding the fact that it had been forfeited by the lessees through their failure either to com-

mence a well or pay rentals in compliance with the terms of the lease, because the facts upon which the forfeiture of the lease rested were not matters of record, but could only be established by parol evidence. Linscott v. Moseman, 84 Kan. 541, 114 P. 1088, 1090." Empire Gas & Fuel Co. v. Stern, 15 F. (2d) 323.

"A vendee who has contracted for a perfect title cannot be compelled to accept a title incumbered by a recorded oil and gas lease, whose invalidity, if it be invalid, depends upon facts which, were the title impugned, the vendee would be obliged to establish by parol evidence." Linscott v. Moseman (Kan.) 114 P. 1088.

The plaintiffs complain that the court should not have directed the verdict because there was some conflicting evidence. Two of the plaintiffs testify that they were in Tulsa on or about the 24th day of January, 1928, and talked to two of the attorneys for the defendant company, Mr. Neuner and Mr. Brenner, and that these attorneys said that they had not examined the abstract. The defendant called G. T. Neuner, the attorney to whom the abstract had been delivered, and he testified that he examined this abstract of title on the 21st day of January, 1928. The only material conflict in the evidence was as to whether the attorneys for the defendant company had examined the abstract prior to January 24th, but we do not think that this is sufficient to take the case to the jury. If the writings between the parties did not constitute an enforceable contract, then the plaintiffs could not prevail. There was no dispute as to the written instrument signed. If the plaintiffs did not deliver an abstract showing a merchantable title, then the plaintiffs cannot prevail. There was no dispute as to what the abstract contained. The burden was on the plaintiffs to prove that they tendered an abstract and that this abstract showed a merchantable title. As we have stated, this abstract failed to show a merchantable title. The dispute in the testimony as to whether the attorneys had or had not examined the abstract was not material to the case under the circumstances. Had the jury returned a verdict in favor of the plaintiffs, we think it would have been the duty of the trial court to set the verdict aside. Under such circumstances, it became the duty of the trial judge to sustain the motion for a directed verdict.

"It is the duty of a trial court to direct a verdict for a party when the evidence is such that if a verdict were returned by the jury for the other party, the court, under the law, would be required to set the same aside." Shaffer v. Ocean Accident & Guarantee Corp., Ltd., 153 Okla. 135, 5 P. (2d) 363.

The plaintiffs next complain that the court erred in refusing to admit evidence on their behalf that an oil well which was being drilled on adjoining property and showed prospects of a good well on January 20th, had been drilled deeper and showed salt water on January 21st. The court excluded this testimony, and we think properly.

If there was a binding contract between the parties, the defendant was legally bound by its contract, no matter whether this well on adjoining land was dry, showed salt water, or otherwise. The court finds that the lower court was right in rendering judgment for the defendant, and that such judgment should be and the same is hereby affirmed.

The Supreme Court acknowledges the aid of Attorneys Theodore Pruett, J. H. Cline, and Toby Morris in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Theodore Pruett and Mr. J. H. Cline and Mr. Toby Morris, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.