HAWKINS et al. v. WRIGHT.

No. 33949.   Jan. 23, 1951.

*226 P. 2d 957.*

Homer H. Bishop, Seminole, for plaintiffs in error.

Criswell & Criswell, Wewoka, for defendant in error.

HALLEY, J. Parties will be referred to by name or as they appeared in the lower court.

Raymond Hawkins and wife owned a tract of land and certain personal property in Seminole county, Oklahoma, which they had listed for sale with Estes Realty Company of Seminole, Oklahoma. George Wright was interested in buying this property, and after talking with Raymond Hawkins, he and Hawkins agreed upon a purchase price of $4,500, and went to the office of Estes Realty Company on May 22, 1947, and advised Mr. Estes of their agreement. George Wright wrote a check for $1,000, payable to the realty company. The secretary of the realty company issued the following receipt:

"Estes Realty Company        No. 3781
"125 North Second St.
"Phone 174
"Seminole, Okla., May 22, 1947

"Received of GEO. L. WRIGHT
One thousand and no-100 Dollars
Down payment on Hawkins Place, subject to clear title.

Amount paid $1000.00
Balance due $3500.00

"/s/  Estes Realty Co.
"By R.L."

No formal real estate contract was drawn up.

On the same day, Raymond Hawkins and George Wright took an abstract covering the land to the office of Criswell & Criswell, attorneys, in Wewoka, Oklahoma, and George Wright requested them to examine the abstract. They examined the abstract, and on May 23, 1947, they delivered an opinion to Mr. Wright, which disclosed beyond doubt that the title was neither "clear, merchantable, nor good." This fact is admitted by both parties. Mr. Hawkins at first requested Criswell & Criswell to perfect the title. They later declined employment because they represented

Mr. Wright. Another attorney, a Mr. Janes, was promptly employed to undertake to perfect title by court action. Among other defects, it was found that a probate sale by the guardian of the Casselman heirs was ineffective, and the record discloses that Mr. Janes brought suit against these heirs and obtained judgment against them in August, 1947, perfecting title as against them. The abstract also disclosed that Raymond Hawkins and wife owned no interest whatever in the royalty in this land. No effort appears to have been made to cure any other defect by court action, other than as against the Casselman heirs.

Mr. Wright wanted to buy the land for resale, and when title was found to be defective he requested the return of the $1,000 down payment made on May 22, 1947. Raymond Hawkins at first agreed to return the down payment, but later declined, since Mr. Estes, his agent, demanded his commission for selling the property, and claimed sufficient time for curing defective title. On May 24, 1947, there was prepared in the office of Estes Realty Company a warranty deed in legal form from Mr. and Mrs. Hawkins to George Wright, naming the grantors, the grantee, the consideration and time of payment, and fully describing the land conveyed. There was also prepared a bill of sale covering the personal property agreed to be sold along with the land. Mr. Hawkins, Mr. Estes, and Mr. Estes' secretary all testified that George Wright was present when these instruments were prepared, knew their contents, and agreed to their terms. George Wright flatly denied that these instruments were offered to him or that he was present when they were prepared, or knew of their preparation or contents. It appears that they were held in the office of the Estes Realty Company.

George Wright filed this action to recover the down payment of $1,000. He sued Raymond Hawkins and wife and

Jess Estes, who had deposited the money to his personal account. Raymond Hawkins and wife filed an answer and cross-petition, claiming certain damages on account of breach of contract by George Wright in refusing to complete the purchase of their property. They alleged that they should have had time to perfect their title, which they admitted was not merchantable when they agreed to sell.

Upon a trial to the court without a jury, it was found that the check and receipt above described did not constitute a binding contract to convey real estate under 15 O.S. 1941 § 136, subd. 5, which provides as follows:

"The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent:

" . . . (5) An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein; and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged."

The trial court ignored the warranty deed and bill of sale above mentioned. We must assume that the court believed George Wright, who testified that he knew nothing about the execution of these instruments, and found that the memoranda (check and receipt) executed were not sufficient to constitute a valid contract. Judgment was rendered in favor of George Wright for $1,000, which he had advanced as a down payment, and against Raymond Hawkins and his wife, on their claim for damages for breach of contract. The court found that the time necessary to perfect the title by court action was unreasonable, and that George Wright rightfully refused to complete the purchase when title was found and admitted to be defective.

The principal issue involved in this appeal is whether or not George Wright,

"the party to be charged", entered into a valid contract to buy real property in such manner as to avoid the statutory provisions above set out, and generally referred to as the "statute of frauds". Raymond Hawkins and wife claim that the check, receipt, warranty deed, and bill of sale above described, when taken together, constituted such a "note or memorandum" of the verbal agreement between the parties as to make it a binding contract. George Wright contends that he knew nothing about the warranty deed or bill of sale, and that his check for $1,000 and the receipt therefor did not constitute such a "note or memorandum" signed by him as to make it a valid contract for the purchase of real property. He signed only the check, and it appears that Mrs. Lenoir, who signed the receipt which was delivered to him, was not authorized in writing to bind Raymond Hawkins and his wife.

Raymond Hawkins and wife claim, first, that George Wright as vendee cannot recover the down payment made on the purchase price of the property because he had entered into a valid contract to purchase and refused to comply therewith; and second, that time is never of the essence of a contract unless expressly provided in the terms thereof.

There is little conflict in the evidence bearing on the principal issues involved, except upon the question of whether or not George Wright knew of and consented to the warranty deed and bill of sale above mentioned. The trial court made no mention of the deed or bill of sale as part of the agreement, and we must assume that he believed the testimony of George Wright with reference to these instruments. The findings and judgment of the trial court will not be disturbed on appeal if there is any competent evidence reasonably tending to support its conclusions. We think such evidence is found in the record before us.

It will be noted that the only instrument signed by George Wright is his

check for the down payment. At the same time, the Estes Realty Company, by Mrs. Lenoir, its secretary, prepared a receipt and delivered it to Mr. Wright. The check did not give the full consideration. It described the land merely as the "Hawkins place", and the receipt gave the total consideration and the amount due, but no better description of the land. Neither the Estes Realty Company nor Mrs. Lenoir was authorized in writing to sign for the vendors of the land. The description of the land as the "Hawkins place" is not sufficient to enable a person of ordinary intelligence to locate the land with certainty; there might be several places in the community that could properly be called the "Hawkins place". No better description is found in the receipt. Then, the receipt clearly shows what may be termed a condition precedent. The clause "subject to clear title" indicates clearly that the transaction was dependent upon the title to the land being clear.

In Sipe v. Greenfield, 116 Okla. 241, 244 P. 424, this court had under consideration the meaning of the term "good title", as used in an agreement to convey an interest in the land, and quoted with approval from Thompson on Real Property, as follows:

" 'As between vendor and purchaser it means the legal estate in fee, free and clear of all valid claims, liens, or incumbrances whatsoever. . . . A good title means not merely a title valid in fact, but a marketable title which can again be sold to a reasonable purchaser or mortgaged to a person of reasonable prudence as security for a loan of money . . . . In a contract to convey a good title, the word "good" comprehends all that the word "clear" does, and the term "clear title" as used in such contract means that there are no incumbrances on the land.' "

The terms "merchantable title", "good title", "perfect title", and "marketable title" have been generally held to be synonymous. A "clear title" was held by the Supreme Court of Montana, in Gantt v. Harper, 267 P. 296, to mean a

title "free from encumbrances, obstructions, burdens, limitations, etc.", or a fee-simple title. The case of Ogg v. Herman, 71 Mont. 10, 227 P. 476, was cited, and in that case it was held that a "clear title" is a title "free from doubt." In Pearce v. Freeman, 122 Okla. 285, 254 P. 719, this court held that a "merchantable", "perfect", and "marketable" title were synonymous terms.

This court has also held that the phrase "party to be charged", as used in the statute of frauds, may apply to either the vendor or the vendee. Jennings et al. v. N. Y. Petroleum Royalty Corp., 169 Okla. 528, 43 P. 2d 762. It was also held in Davis v. Holman, 163 Okla. 59, 20 P. 2d 575, that the term "party to be charged" means the party against whom a contract is sought to be enforced. Raymond Hawkins and wife have not sought to compel George Wright to carry out the alleged contract to purchase. In lieu of suing for specific performance, they have elected to sue for damages for the failure of George Wright to complete the transaction. George Wright is the "party to be charged", within the meaning of the term as used in the statute quoted above. The title to the land involved herein is admittedly not clear, merchantable, good, or perfect.

In Waggoner Bank & Trust Co. v. Doak, 69 Okla. 245, 172 P. 61, this court clearly recognized that a contract to convey and purchase land may contain a condition precedent to the taking effect of the written agreement, and that such condition may be established by parol evidence. The syllabus expressing that rule is as follows:

"Parol evidence is not admissible to vary the terms of a written contract, but parol evidence may be introduced to prove a separate parol agreement constituting a condition precedent to the taking effect of the written contract."

If the receipt delivered to George Wright had been properly executed and signed by defendants, it must be held

to contain a provision in writing which is in fact a condition precedent to the taking effect of the contract. The receipt expressly provides that the transaction is dependent upon a "clear title", which we hold to be synonymous with a "merchantable", "marketable", "perfect", and "good" title of record.

In a recent opinion of this court, Oakes v. Trumbo, 201 Okla. 102, 201 P. 2d 916, the well established rules relative to contracts for the sale of real property are clearly expressed as follows:

"1. An agreement for the sale of real estate is invalid unless the same or some note or memorandum thereof be in writing, and subscribed by the party to be charged or his agent; and such agreement, if made by an agent, is invalid unless the authority of the agent be in writing, subscribed by the party sought to be charged.

"2. A complete contract, binding under the statute of frauds, may be gathered from letters, telegrams, and writings between the parties relating to the subject matter, and so connected with each other that they may be said to fairly constitute one paper relating to the contract.

"3. A memorandum, to be sufficient under the statute of frauds, must be complete in itself, and leave nothing to rest in parol.

"4. A contract for the sale of lands, the specific performance of which a court of equity will enforce, must be certain in its terms and that certainty required has reference to the parties contracting, the terms of the sale and the description of the property."

Measured by the foregoing rules, we conclude that the check and receipt shown above were not sufficient to constitute a valid contract under the statute of frauds, and that, if they were sufficient, the receipt contained a condition precedent to the taking effect of the contract, and that such condition could not be met by the vendors except by court action. Some of the Casselman heirs were minors, and they owned an outstanding one-third interest in the land.

While there is no question but that the contention that time is never of the essence of a contract unless expressly provided for therein, is correct, and there is no doubt but that Mr. Hawkins acted promptly in an effort to cure some of the defects in his title by court action, yet the record shows that he cured only the defects as to the outstanding interest of the Casselman heirs. Mr. and Mrs. Hawkins owned no royalty interest whatever, and it was held in Stone v. Lawrence, 153 Okla. 89, 5 P. 2d 124, that a deed reserving the mineral rights held by the Osage Tribe of Indians was not sufficient to meet an agreement to deliver a good and merchantable title to land, and constituted a cloud upon the title.

In Kneeland v. Hetzel, 103 Okla. 3, 229 P. 218, this court held that vendee, tendering abstract not complying with vendor's contract to furnish abstract showing a merchantable title, may refuse to accept title so tendered, rescind contract and recover back any part of purchase money paid.

It was further said in Seyfer v. Robinson, 93 Okla. 156, 219 P. 902, that where vendor fails to furnish an abstract showing sufficient title, the purchaser is entitled to the return of his deposit.

We conclude that the trial court did not err in holding that it would require an unreasonable time to perfect title by court action. The vendors knew that the vendee was buying the land for resale. The written memorandum was not sufficient to constitute a valid contract, and if it had been, it contained a condition precedent to its being effective, and this condition was clearly not complied with by the vendors.

The judgment of the trial court is therefore affirmed.

CORN, GIBSON, JOHNSON, and O'-NEAL, JJ., concur. ARNOLD, C. J., LUTTRELL, V.C.J., and WELCH and DAVISON, JJ., concur in conclusion.